## COMMONWEALTH *vs.* EDWARD GIVEN.

No. 02-P-544.

Worcester. June 6, 2003. - September 24, 2003.

Present: BECK, KASS, & DOERFER, JJ.

Further appellate review granted, 440 Mass. 1106 (2003).

*Sex Offender. Practice, Civil,* Sex offender. *Evidence,* Sex offender, Hearsay, Police report. *Error, Harmless.*

At the trial on a petition pursuant to G. L. c. 123A, § 14, to commit the defendant as a sexually dangerous person, which petition was filed as he was to be released at the completion of sentences imposed for sexual offenses on his stepchildren, an eleven year old boy whom he knew, and the twelve year old niece of a person he knew, the judge's admission in evidence of a police report that referred to an allegation that the defendant had sexually assaulted an unidentified child (an allegation that did not result in any indictment of the defendant) constituted prejudicial error requiring a new trial, where the inadmissible hearsay supported an inference that the defendant was seeking victims beyond those that were known to him and enhanced a portrayal of him as a predator who was out of control and not likely to be able to control his behavior outside a secure facility, and where it could not be said that such inadmissible hearsay had no, or very slight, influence on the verdict of the jury. [393-396]

PETITION for civil commitment filed in the Superior Court Department on November 10, 2000.

The case was tried before *James P. Donohue*, J.

The case was submitted on briefs.

*David H. Erickson* for the defendant.

*John J. Conte*, District Attorney for the Middle District, & *Ellyn H. Lazar-Moore*, Assistant District Attorney, for the Commonwealth.

DOERFER, J. After a trial held pursuant to G. L. c. 123A, § 14, a jury determined that the defendant was a sexually dangerous person. At trial, over objection, a police report was admitted in evidence that referred to an allegation that the defendant had sexually assaulted an unidentified child; this allegation did not

result in any indictment of the defendant. The admission of this evidence constituted prejudicial error[1] requiring a new trial.

*Evidence at trial.* In 1984 the defendant was convicted of indecent assault and battery on a child under fourteen. The victim was the ten year old son of the defendant's cousin, and the incident occurred on or about November 5, 1983. The defendant was sentenced to probation with counseling. In 1991, the defendant pleaded guilty to offenses set forth in two separate sets of indictments. The first set involved sexual assaults on his two stepchildren, a ten year old girl and a nine year old boy. Those incidents occurred during late 1989 and early 1990 in the home where the defendant and the children all lived. The second set of indictments was based on incidents that occurred on October 19, 1990, involving an eleven year old boy whom the defendant knew, and a twelve year old girl with mental retardation, Francine,[2] who was the niece of a friend of the defendant.[3] The defendant received concurrent committed sentences of nine to twelve years on these two sets of indictments, which he served. The petition to commit him as a sexually dangerous person was filed as he was about to be released at the completion of his sentences. G. L. c. 123A, § 12(*b*).

The only issues at trial were whether the defendant suffers from a mental abnormality or personality disorder and whether that mental abnormality or personality disorder makes him likely to engage in sexual offenses if he is not confined to a secure facility. G. L. c. 123A, § 1. The trial on these issues included the testimony of two experts for the Commonwealth and two for the defendant who came to differing conclusions whether the defendant was a sexually dangerous person as defined by the statute. The defendant also testified. The judge allowed police reports in evidence under G. L. c. 123A, § 14(*c*).

The defendant objected to the admission of a portion of one

---

[1] The controlling decisions, as will be seen, were handed down after the trial and, thus, the error does not reflect any inattention on the part of the trial judge.

[2] A pseudonym.

[3] On the combination of these two sets of indictments he pleaded guilty to two charges of rape of a child, five charges of indecent assault and battery on a child under fourteen, and two charges of indecent assault and battery on a mentally retarded child.

police report that included information about an alleged sexual assault involving an unidentified child that was never prosecuted. The police report in issue related to the investigation of the forcible rape of Francine. In her interview with the police, Francine recounted a sequence of events involving the defendant, who had requested and received permission from her uncle to take her to a roller rink. On the way, the defendant said that he needed to pick up his stepchildren. The defendant and Francine then went into a residence where his stepchildren were supposed to be and, when they were not there, he put his hand down Francine's blouse and in her pants. Francine threatened to tell her uncle, and they left. At the roller rink Francine started to call her father, but when the defendant, who was watching, started to approach her, Francine handed the phone to a bystander and told that bystander to complete the call and to ask Francine's father to come and get her. Francine said the defendant forced her into his car, locked all the doors, and forcibly penetrated her vaginally. Francine said she then managed to escape back into the roller rink. Her father arrived, and the defendant told him that Francine was upset because he was unable to buy her a soda. The defendant took off quickly in his car, and Francine told her father what had happened.

The report then states, "[Francine] later said that while they were in the locked car there was a 6 year-old boy inside the car also and that Ed tried to molest him, too. The 6 year-old was standing outside waiting for his ride [she] said. [Francine] mentioned something about the 6 year-old calling his mom and his mom calling his Dad on the cellular phone and that his Dad would be picking him up. The 6 year-old's Dad arrived and the boy ran over to his dad's car and he was crying and had a cut on his hand. [Francine] also said that the boy's father had called the police on his cellular phone in the car. Then the boy and his dad got in their car. Then [Francine] said [the defendant] approached the boy's father's car and the boy's father took off."[4] As previously stated, these allegations concerning the six year old boy did not result in any indictment.

---

[4]Another part of the police report, in the form of questions to the complainant and her answers, stated:

*Q.* "Where in the car did this happen?"

*Inadmissibility of portions of the police report.* The defendant argues that G. L. c. 123A, § 14(*c*), is unconstitutional as applied in this case because the judge was not required to rule on the reliability of the hearsay supposedly made admissible by the statute. We need not consider the constitutional argument, however, because the evidence in question was not admissible under the statute. *Commonwealth* v. *Markvart,* 437 Mass. 331, 339 (2002).[5] *Commonwealth* v. *Boyer,* 58 Mass. App. Ct. 662, 666-667 (2003). G. L. c. 123A, § 14(*c*), as inserted by St. 1999, c. 74, § 8, provides:

> "Juvenile and adult court probation records, psychiatric and psychological records and reports of the person named in the petition, including the report of any qualified examiner, as defined in section 1, and filed under this chapter, police reports relating to such person's prior sexual offenses, incident reports arising out of such person's incarceration or custody, oral or written statements prepared for and to be offered at the trial by the victims of the person who is the subject of the petition and any other evidence tending to show that such person is or is not a sexually dangerous person shall be admissible at the trial if such written information has been provided to opposing counsel reasonably in advance of trial."

*A.* "In the back seat, there was also a little boy in the car with us at this time and that [the defendant] did the same thing to the little boy."

*Q.* "Were the seats up or down?"

*A.* "It was up."

*Q.* "Can you tell me something about the little boy."

*A.* "Not really, I think he was 6 years old."

[5]The Commonwealth argues that defendant did not object at trial on the ground that the statute did not apply, and thus that the defendant cannot argue the issue on appeal. Both parties argue the constitutional issue on appeal. Because the statute does not permit the admission of this evidence, we should not reach the question whether the statute would be constitutional if it did provide for the admission of the evidence, even though the scope of the statute was not argued at trial. Constitutional questions should not be considered in the abstract or on a hypothetical basis. "[I]ssues of statutory interpretation should be resolved prior to reaching any constitutional issue." *Massachusetts Prisoners Assn. Political Action Comm.* v. *Acting Governor,* 435 Mass. 811, 816 (2002), quoting from *1010 Memorial Drive Tenants Corp.* v. *Fire Chief of Cambridge,* 424 Mass. 661, 663 (1997).

In *Commonwealth* v. *Markvart, supra,* the Supreme Judicial Court held that a police report relating to a sexual assault by the defendant that resulted in an indictment that was later nol prossed did not constitute a police report "relating to such person's prior sexual offenses" and, thus, was not admissible at trial under the statute. The court also stated that such a report was not admissible as " 'any other evidence' tending to show that the defendant is or is not sexually dangerous" as that phrase is used in G. L. c. 123A, § 14(*c*). *Markvart, supra* at 335 n.3. The portion of the police report to which objection was made here does not, as it did not in *Markvart,* "relate to" a "prior sexual offense" of the defendant because he had not been charged, much less convicted, of any offense involving the alleged assault on the unidentified six year old boy. Compare *Markvart, supra* at 337.

The record is clear that the police report was admitted, without limitation, for the truth of the matter stated therein, namely that the defendant had sexually assaulted a six year old boy on the same occasion that he sexually assaulted Francine.[6] This information was available to the jury in assessing whether the defendant was a sexually dangerous person. There was no doubt about the use to which the jury were allowed to put this information because the judge specifically told the jury they could consider both charged and uncharged sexual misconduct:

> "But in deciding the likelihood that Mr. Given will engage in the commission of sexual offenses if not confined to a secure facility you are free to draw inferences based upon his past sexual misconduct and the testimony of the experts. *Mr. Given's past sexual misconduct need not have led to criminal charges in order for you to consider that in determining the issues before you.* You may . . . also consider any sexual misconduct charges that have [been] brought to your attention" (emphasis supplied).

---

[6]The entire police report could be used by the experts in formulating their opinions, because the information in the report was otherwise admissible. *Markvart, supra* at 337, citing *Department of Youth Servs.* v. *A Juvenile,* 398 Mass. 516, 531 (1986). Here the report states that Francine was claiming to have been a witness to the assault on the six year old boy; her testimony would be admissible on that subject. Compare *Commonwealth* v. *Boyer, supra* at 667.

The only uncharged conduct in evidence was the alleged incident relating to the six year old boy described in the police report.

*Harmless error standard.* The defendant objected to the admission of the evidence and thus we consider whether the admission of the evidence was harmless error. *Commonwealth* v. *Federico*, 425 Mass. 844, 852 & n.14 (1997). The issue of the admissibility of the evidence was inherently raised by the defendant's constitutional objection even though not expressly argued to the trial judge. See note 5, *supra.*

Error in the admission of evidence over objection is harmless only if we can be "sure that the error did not influence the jury, or had but very slight effect . . . ." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting from *Kotteakos* v. *United States*, 328 U.S. 750, 764 (1946).[7] As Justice Greaney explained in his concurring opinion in *Commonwealth* v. *Alphas*, 430 Mass. 8, 23 (1999). "The prejudicial (or harmless) error test stated by the court is that drawn from the *Kotteakos* case [*Kotteakos* v. *United States, supra*]. The test has been applied in many of our decisions. . . . [T]he prejudicial error test calls for a comparative analysis of the circumstances in a particular case. The appellate court, attentive to the fact that the defendant's rights at trial have been preserved, inquires whether there is a reasonable possibility that the error might have contributed to the jury's verdict. The burden of showing the absence of error is on the Commonwealth, see *Commonwealth* v. *Hanger*, 377 Mass. 503, 510 (1979), and cases cited, and the Commonwealth also bears the risk of doubt when any exists as to the error being nonprejudicial. This test is quantitatively more favorable to a defendant than the substantial risk of a miscarriage of justice test."

Where the error is in the admission of evidence we look to see whether, "On balance there was enough potential force to the [erroneously admitted evidence] so that we cannot shrug off the error attending its admission as harmless. There is danger in speculation long after the fact about what impact inadmissible evidence may have had on a jury's reasoning. . . . [C]ourts

---

[7]For a general discussion of the application of the harmless error doctrine in civil cases see Smith & Zobel, Rules Practice § 61.2.

should set aside a conviction unless sure that the error did not influence the jury, or had but slight effect." *Commonwealth* v. *Seminara,* 20 Mass. App. Ct. 789, 798 (1985).

We must review the evidence properly admitted at trial to determine if we are sure that the improperly admitted evidence had no, or very slight, influence on the verdict of the jury. The experts disagreed on several points. On the Commonwealth's side they testified that the defendant was a pedophile and thus suffered "from a mental abnormality or personality disorder." The defendant's experts said he was in remission. The defendant's experts gave weight to the fact that the defendant's victims were related or known to him as diminishing the likelihood of his reoffending. Both of these features of the defense experts' testimony were undermined by the evidence of his alleged assault on the unidentified six year old boy. The defendant's testimony and his counsel's argument at trial were that he had served nine years in prison and had learned his lesson; that he had worked out a relapse prevention program; that he had engaged in some therapy relating to his sexually dangerous conduct (the degree of which was contested at trial); and that his offending was related to alcohol abuse and depression arising out of various personal misfortunes. Although he had multiple offenses, some while on probation or on bail, there was sharp disagreement among the experts on the likelihood of his re-offending. His experts tended to rely on statistical models and deprecated the subjective clinical aspects of the approach of the Commonwealth's experts.

On this record we cannot be sure that the inadmissible evidence had no, or very slight, influence on the verdict of the jury. See *Commonwealth* v. *Bladsa,* 362 Mass. 539, 540 (1972). The inadmissible hearsay supported an inference that the defendant was actively seeking victims beyond those who were known to him and enhanced a portrayal of him as a predator who was out of control and not likely to be able to control his behavior outside of a secure facility. The setting of the alleged incident was one in which he was essentially portrayed as assaulting two victims of different genders and markedly different ages more or less simultaneously, a picture that had a high potential of influencing the jury's assessment of his ability to control his future conduct.

*Other issues.* There was no error in denying the defendant's motion for a required finding of not guilty. The Commonwealth's experts supplied sufficient testimony to support a conclusion that the defendant met the statutory definition of a sexually dangerous person. The other arguments on appeal have either been waived or submitted by appellate counsel under the reservations of *Commonwealth* v. *Moffett*, 383 Mass. 201, 208 (1981). As to the latter, as well as the points raised in a separate brief filed by the defendant, they are without merit and require no discussion.

*Judgment reversed.*

*Special verdict set aside.*