## COMMONWEALTH *vs.* EDWARD GIVEN.

Worcester. February 2, 2004. - May 20, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Evidence,* Sex offender, Hearsay, Police report. *Practice, Criminal,* Plea. *Due Process of Law,* Sex offender.

This court concluded that, at the commitment trial of a person accused of being sexually dangerous, a police report concerning a prior sexual offense to which the defendant had pleaded guilty was admissible without redaction of statements about an uncharged contemporaneous sexual assault, as such report came within the scope of admissible reports under G. L. c. 123A, § 14 (*c*) [743-746], and such admission did not violate the due process provisions of either the Massachusetts or the Federal Constitution, given the reliability of the evidence [746-748]. IRELAND, J., dissenting, with whom SPINA and COWIN, JJ., joined.

PETITION for civil commitment filed in the Superior Court Department on November 10, 2000.

The case was tried before *James P. Donohue,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David Hirsch,* Committee for Public Counsel Services, for the defendant.

*John J. Conte,* District Attorney, & *Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth, submitted a brief.

CORDY, J. At the commitment trial of a person accused of being sexually dangerous, the Commonwealth is entitled to introduce in evidence "police reports relating to such person's prior sexual offenses." G. L. c. 123A, § 14 (*c*). We have previously held that "offenses," as used in § 14 (*c*), means convictions or adjudications, so that the Commonwealth may not introduce reports of nol prossed allegations of sexual assault. *Commonwealth* v. *Markvart,* 437 Mass. 331, 336 (2002). In this case, we must decide whether a police report concerning a prior

sexual offense to which a defendant has pleaded guilty is admissible without redaction, when the same report also contains statements about an uncharged contemporaneous sexual assault. We conclude that it is.

1. *Background.* In November, 2000, the Commonwealth commenced proceedings under G. L. c. 123A, §§ 12-16, to commit Edward Given as a sexually dangerous person. After a finding of probable cause, the matter was tried before a jury in the Superior Court.

At trial, the Commonwealth introduced evidence that Given had been convicted in 1984 of indecent assault and battery on a child under fourteen years, and that he had pleaded guilty in 1991 to two indictments charging rape of a child, five indictments charging indecent assault and battery on a child under fourteen years, and two indictments charging indecent assault and battery on a mentally retarded person.[1] Several of the charges to which Given pleaded guilty stemmed from a series of acts on a single day in 1990. One of Given's victims on that day, whom we shall call Francine, was the twelve year old mentally retarded niece of one of Given's friends. At trial, over Given's objection, the Commonwealth introduced an unredacted police report detailing Francine's allegations.[2] According to the report, Given agreed to take Francine to the Roll-On America roller skating rink in Lancaster, but stopped at a house on the way and molested her. After they reached the rink, Given sexually assaulted her again in his locked motor vehicle. Francine reported that a six year old boy was also in the locked vehicle at the time of the assault, and that Given also attempted to molest him.[3] Given was never charged with the alleged assault on the six year old boy.

---

[1]The indictments to which Given pleaded guilty in 1991 alleged assaults on four different children: Given's stepdaughter, his stepson, the twelve year old mentally retarded niece of a friend, and another eleven year old boy he knew. Given was first indicted for the assaults on his stepchildren, then, while out on bail awaiting trial, he assaulted the other two children.

[2]Pursuant to G. L. c. 123A, § 13 (*b*), the police report was also made available to the examiners who evaluated and diagnosed Given prior to trial. See *Commonwealth* v. *Markvart*, 437 Mass. 331, 333-335 (2002).

[3]Two portions of the report make explicit reference to the six year old boy. The first, in narrative form, states:

At the conclusion of the trial, the jury rendered a special verdict finding that Given was a sexually dangerous person, and the trial judge ordered him committed to the treatment center for an indefinite period, from one day to life. Given appealed, and the Appeals Court reversed the judgment and set aside the jury's special verdict, reasoning that the portion of the police report concerning the alleged assault on the six year old boy was inadmissible under § 14 (*c*), because it did not relate to a prior sexual offense of which Given had been convicted. *Commonwealth* v. *Given*, 59 Mass. App. Ct. 390, 394 (2003). We granted the Commonwealth's application for further appellate review. We find no error in the judge's decision to allow introduction of the unredacted police report and therefore affirm the judgment.

2. *Discussion.* a. *Scope of admissible reports under § 14 (c).* We first consider whether the police report was admissible under G. L. c. 123A, § 14 (*c*). Hearsay that is inadmissible under the rules of evidence is inadmissible in a proceeding under G. L. c. 123A, unless the evidence is made admissible by statute. *Commonwealth* v. *Markvart, supra* at 335; *Commonwealth* v. *Rodriguez,* 376 Mass. 632, 638 & n.10 (1978).

> "[Francine] later said that while they were in the locked car there was a 6-year-old boy inside the car also and that [Given] tried to molest him, too. The 6-year-old was standing outside waiting for his ride[,] [Francine] said. [Francine] mentioned something about the 6-year-old calling his mom and his mom calling his Dad on the cellular phone and that his Dad would be picking him up. The 6-year-old's Dad arrived and the boy ran over to his Dad's car and he was crying and had a cut on his hand. [Francine] also said that the boy[']s father had called the police on his cellular phone in the car. Then the boy and his Dad got in their car. Then [Francine] said [Given] approached the boy's father's car and the boy's father took off."

The report also contains reference to the six year old boy in Francine's answers to a series of questions:

POLICE OFFICER: "Where in the car did this happen?"

FRANCINE: "In the back seat, there was also a little boy in the car with us at this time and that [Given] did the same thing to the little boy."

POLICE OFFICER: "Were the seats up or down?"

FRANCINE: "It was up."

POLICE OFFICER: "Can you tell me something about the little boy?"

FRANCINE: "Not really, I think he was 6 years old."

Section 14 (*c*) enumerates several categories of specifically admissible evidence:

> "Juvenile and adult court probation records, psychiatric and psychological records and reports of the person named in the petition, including the report of any qualified examiner, as defined in section 1, and filed under this chapter, *police reports relating to such person's prior sexual offenses,* incident reports arising out of such person's incarceration or custody, oral or written statements prepared for and to be offered at the trial by the victims of the person who is the subject of the petition and any other evidence tending to show that such person is or is not a sexually dangerous person *shall be admissible at the trial* if such written information has been provided to opposing counsel reasonably in advance of trial" (emphases added).

Although we have termed this set of exceptions " 'a very radical departure' from ordinary evidentiary rules," we have nonetheless acknowledged that the Legislature has expressed a clear policy preference in favor of admitting such evidence in G. L. c. 123A proceedings. *Andrews, petitioner,* 368 Mass. 468, 473 (1975), quoting *Commonwealth* v. *McGruder,* 348 Mass. 712, 715 (1965), cert. denied, 383 U.S. 972 (1966). The report admitted in evidence in this case is plainly a police report, and both parties concede that the Commonwealth provided the report to Given in advance of trial.

The report is also one "relating to [Given's] prior sexual offenses," as we have construed the term "offenses" in *Commonwealth* v. *Markvart, supra* at 336. An accepted guilty plea is a judicial finding of guilt, entered after a judge is satisfied that, among other things, there is a factual basis for the underlying charge. Mass. R. Crim. P. 12 (c) (5) (A), 378 Mass. 866 (1979). Consequently, a charge to which a defendant pleads guilty is an "offense" for purposes of G. L. c. 123A, § 14 (*c*). In this case, Francine's allegations that Given sexually assaulted her in his automobile at the roller skating rink gave rise to indictments

to which Given pleaded guilty.[4] The police report that memorial-
izes Francine's description of what occurred is therefore admis-
sible under § 14 (*c*) as a "police report relating to [Given's]
prior sexual offenses."

The more difficult issue is whether the portion of the report
describing Francine's statement that Given molested a six year
old boy should have been redacted. The language of § 14 (*c*)
makes clear that the Legislature did not intend to limit the
scope of information admissible under § 14 (*c*) to the mere fact
of conviction or even the facts presented at a plea colloquy;
rather, other information in police reports — including any
statements describing the defendant's conduct and the circum-
stances attendant to the offense — is also admissible. The fact
that that information could have, but did not, result in additional
criminal charges is irrelevant to its admissibility under § 14
(*c*).[5]

Francine's statement refers to the six year old boy twice, and,
in both instances, the references appear as part of her descrip-
tion of her own abuse. According to Francine, the boy was in
the automobile while Given sexually assaulted her, and Given
"did the same thing to the little boy." She and the boy were al-
legedly molested at the same time, in the same way, by the
same person. This statement is unambiguously "relat[ed] to"
the circumstances of her abuse in Given's automobile. Because
Given pleaded guilty to charges stemming from this abuse, the

[4]Given was charged with and pleaded guilty to indecent assault and battery
on a child, indecent assault and battery on a mentally retarded person, and
rape of a child based on Francine's allegations.

[5]Police reports that include witness statements, by their nature describe an
*incident*, including its surrounding circumstances and details, not just the bare
bones elements of the crime(s) that are ultimately prosecuted. On the dissent's
theory, everything is "unreliable hearsay" unless it comprises part of an ele-
ment of a sexual offense for which the defendant has been convicted or
pleaded guilty. See *post* at 751. Of course, experts want those surrounding
details that may provide clues, going beyond the mere fact of the commission
of a sexual offense, that indicate mental abnormality or future dangerousness
(e.g., accompanying acts of violence or what the defendant said during the
crime). Those surrounding details may include other offenses (sexual or
nonsexual), either against the victim of the sexual assault or against another
victim (e.g., victim's roommate not sexually assaulted, but tied up and forced
to watch assault). Section 14 (*c*) ensures that those details are made available
to the experts and fact finder alike.

police report, including Francine's statement about what occurred, related to an offense and was admissible at Given's trial.[6]

b. *Due process.* Having determined that the police report was admissible without redaction under § 14 (*c*), we must evaluate whether its admission violates the due process provisions of the Massachusetts or the Federal Constitution.[7,8]

Given argues that the admission of Francine's statement (as contained in the police report) without an independent finding that it was reliable violated his right to due process. "While commitment proceedings under c. 123A are civil proceedings, the potential deprivation of liberty to those persons subjected to these proceedings 'mandates that due process protections apply.' " *Commonwealth* v. *Bruno*, 432 Mass. 489, 502 (2000), quoting *Commonwealth* v. *Travis*, 372 Mass. 238, 250 (1977). However, even in proceedings that may result in a deprivation of liberty, "the due process clause does not place a per se prohibition on the use of hearsay evidence." *Commonwealth* v. *Durling*, 407 Mass. 108, 115 (1990) (probation revocation hearing). To determine whether the use of hearsay evidence in a civil commitment case

---

[6] We do not consider or decide whether statements in a police report that include information concerning uncharged misconduct completely unrelated in time and circumstance to the underlying sexual offense must be redacted.

[7] The Appeals Court did not reach the constitutional issues in this case, because it determined that Francine's statements were inadmissible under § 14 (*c*). *Commonwealth* v. *Given*, 59 Mass. App. Ct. 390, 393 (2003).

[8] We note at the outset that G. L. c. 123A, § 14 (*c*), does not implicate Given's rights under the confrontation clause of either the Massachusetts or the Federal Constitution. See Sixth Amendment to the United States Constitution ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ."); art. 12 of the Massachusetts Declaration of Rights ("every subject shall have a right . . . to meet the witnesses against him face to face"). "[P]roceedings under c. 123A are civil and not penal . . . . Hence, the right of confrontation secured to a defendant in criminal cases under art. 12 of our Declaration of Rights is not involved." (Citations omitted.) *Commonwealth* v. *McGruder*, 348 Mass. 712, 716 (1965), cert. denied, 383 U.S. 972 (1966). Accord *Dutton* v. *Evans*, 400 U.S. 74, 97 (1970) (Harlan, J., concurring in the result) ("Confrontation Clause . . . applies only to criminal prosecutions . . ."); *United States* v. *Flores*, 985 F.2d 770, 781 (5th Cir. 1993) ("[Federal] Confrontation Clause applies only in criminal prosecutions and protects only the accused").

violates due process, we need look no further than to its reliability.[9] See *id.* at 117. See also *Comomonwealth* v. *Negron, ante* 685, 690 (2004).

"Evidence which would be admissible under standard evidentiary rules is presumptively reliable." *Commonwealth* v. *Durling, supra* at 118. However, as we have stated, the admission of hearsay contained in police reports under § 14 (*c*) is " 'a very radical departure' from ordinary evidentiary rules." *Andrews, petitioner, supra,* quoting *Commonwealth* v. *McGruder, supra.* This statutory departure is justified, however, where the proffered report relates to an offense of which the defendant has been convicted. The fact of conviction is a power-

[9]We articulated the principle that reliability is the "touchstone" for due process in *Commonwealth* v. *Durling,* 407 Mass. 108, 117-118 (1990). In articulating the standards for the reliability of hearsay evidence, we adopted the United States Supreme Court's rule that "reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* at 118, citing *Ohio* v. *Roberts,* 448 U.S. 56, 66 (1980).

The *Roberts* case involved a challenge to hearsay evidence not under the due process clause, but under the confrontation clause. *Ohio* v. *Roberts, supra* at 62-63. Recently, the Supreme Court overruled *Roberts,* replacing it with a bright-line confrontation clause rule: "Where testimonial evidence is at issue . . . the Sixth Amendment demands . . . unavailability and a prior opportunity for cross examination." *Crawford* v. *Washington,* 124 S. Ct. 1354, 1374 (2004).

The *Crawford* case has no direct bearing on this case, because, as we have made clear, the confrontation clause does not apply to civil commitment proceedings. See note 8, *supra.* The dissent nonetheless argues that the reasoning of the *Crawford* case should guide our due process analysis in this case. *Post* at 750 n.1. While it is true that the *Crawford* case includes language criticizing the *Roberts* reliability test as "unpredictable," *Crawford* v. *Washington, supra* at 1371, the reasoning of the case rests almost exclusively on the historical background of the confrontation clause and the particular concerns motivating its ratification, *id.* at 1359-1367. The Court summarized its historical analysis by stating:

> "To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. *It commands, not that evidence be reliable, but that reliability be assessed in a particular manner:* by testing in the crucible of cross-examination" (emphasis added). *Id.* at 1370.

Unlike the confrontation clause, due process demands that evidence be reliable in substance, not that its reliability be evaluated in "a particular manner." That the focus on reliability may not accommodate a simple, predictable, bright-line rule does not alter the fact that reliability, not cross-examination, is the "due process touchstone." *Commonwealth* v. *Durling, supra* at 117.

ful independent indicator of the reliability of the statements describing the offense on which the conviction rests. In this case, while the fact that Francine, a child suffering from mental retardation, made her statement to police shortly after the traumatic experience of two sexual assaults might cast some doubt on its reliability, Given pleaded guilty to these very assaults.

Insofar as Francine's statement concerning the six year old boy was part of her detailed description of the circumstances of Given's sexual assaults on her, its reliability is similarly bolstered by Given's plea. This is so even though his plea may not have contained an admission to any of the specific facts as described by Francine.[10] Without Given's plea, Francine's statement would be merely an unproven allegation; with the plea, her statement is part of a set of facts that formed the basis for the charges to which Given pleaded guilty. Cf. *Commonwealth v. Jackson*, 428 Mass. 455, 459-460 (1998) (guilty plea bolstered statement concerning precise factual circumstances of crime, providing sufficient indicia of reliability to justify admitting alleged factual circumstances of crime as modus operandi evidence). To the extent Given desired to challenge any of the details provided by Francine and included in the report, he had both advance notice of them and the power to call Francine or others as witnesses for examination in his case. G. L. c. 123A, § 14 (*c*) (police reports admissible only if "provided to opposing counsel reasonably in advance of trial"). G. L. c. 123A, § 14 (*b*) ("person named in the petition shall be entitled to have process issued from the court to compel the attendance of witnesses on his behalf"). The admission of the unredacted police report containing Francine's statements did not offend due process.[11]

c. *Additional issues.* Given raises several other challenges to

---

[10]Applying "[p]rinciples similar to collateral estoppel," the dissent claims that the effect of Given's guilty plea extended only "to that portion of [Francine's] statement concerning the facts necessary to support a conviction." *Post* at 751. To the contrary, basic concepts of corroboration — not collateral estoppel — are what endow Francine's statement with reliability. Given's guilty plea confirms the central part of Francine's statement, therefore lending credibility to the statement as a whole, including the parts of her statement not directly corroborated by his plea.

[11]The hearsay contained in the police report was also not the only evidence admitted against Given at trial. See *Commonwealth v. Durling, supra* at 118.

the judgment. As the Appeals Court concluded, the testimony of the Commonwealth's examiners was more than sufficient to support a finding that Given was a sexually dangerous person, and Given's motion for a required finding of not sexually dangerous was properly denied. None of the remainder of Given's arguments has merit.[12]

3. *Conclusion.* The judge committed no error by admitting the unredacted police report containing Francine's statement concerning Given's contemporaneous sexual abuse of a six year old boy. The jury's special verdict is therefore reinstated, and the judgment is affirmed.

*So ordered.*

IRELAND, J. (dissenting, with whom Spina and Cowin, JJ., join). Because I conclude that the portions of the police report concerning the abuse of Francine that referenced the unidentified, unknown six year old boy were inadmissible under G. L. c. 123A, § 14 (*c*), and violated the defendant's due process rights, and because, in the circumstances of this case, we cannot know for certain that the information did not influence the jury's decision, I would set aside the special verdict and reverse the judgment.

As the court notes, *ante* at 741, in *Commonwealth* v. *Markvart*, 437 Mass. 331 (2002), we held that the phrase "prior sexual offenses" as used in G. L. c. 123A, § 14 (*c*), regarding the admissibility of information contained in police reports means a conviction or adjudication. *Id.* at 336. Because this is a narrow exception to the normal rules of evidence, it should be construed strictly. In this case, Given was not charged with any crime concerning the six year old boy and thus was neither convicted nor had an adjudication concerning him.

---

The Commonwealth presented evidence of ten convictions of crimes involving sexual assaults on five different children, as well as the testimony of two qualified examiners, both of whom concluded that Given was sexually dangerous.

[12]This includes both the arguments appearing in Given's separate brief filed without the aid of counsel and those appearing in Given's main brief but disclaimed by counsel under *Commonwealth* v. *Moffett*, 383 Mass. 201, 208 (1981).

Moreover, even if the statute does not preclude the admission of the evidence about the six year old boy, its admission violates Given's due process rights because it constitutes unreliable hearsay. The court implicitly acknowledges that the evidence is hearsay that does not fit within any firmly rooted exception to the hearsay rule, *ante* at 747 n.9, citing *Ohio* v. *Roberts,* 448 U.S. 56, 66 (1980). In that case, the Supreme Court held that hearsay may be admissible if it is reliable and falls within a firmly rooted exception to the hearsay rule. Unless the hearsay fits within such an exception, however, it must be shown to possess a "particularized guarantee[] of trustworthiness" before it may be admitted in evidence.[1] *Id.* at 67.

The court concludes that Francine's statement contains the requisite trustworthiness based on the fact that Given pleaded guilty to sexually assaulting her. His guilty plea undoubtedly imbued her statement with reliability, but not all of it. Principles similar to collateral estoppel must apply, for that is the basis underlying the reliability, and hence the admissibility, of those portions of Francine's statement relating to the offenses committed against her. Here, there is no indication that, in his guilty plea, Given adopted that portion of Francine's statement that referred to the six year old boy. The record is silent as to

---

[1]In a recent opinion, the Supreme Court overruled, albeit in the criminal context, the test for reliability outlined in *Ohio* v. *Roberts,* 448 U.S. 56 (1980). *Crawford* v. *Washington,* 124 S. Ct. 1354 (2004) (holding that, where wife unavailable to testify, use of her out-of-court statement to police violated confrontation clause of Sixth Amendment to United States Constitution).

The Court stated that the *Roberts* test led to unpredictable results, but its "unpardonable vice . . . [is] its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." *Id.* at 1371. The Court also stated that the Sixth Amendment right to confrontation "commands . . . that reliability [of evidence] be assessed . . . by testing in the crucible of cross-examination . . . [and that the] *Roberts* test allows a jury to hear evidence . . . based on a mere judicial determination of reliability." *Id.* at 1370.

Although the holding in the *Crawford* case is inapplicable here because the proceeding was civil rather than criminal, it is the Court's *reasoning* regarding the reliability of out-of-court statements that applies in this context and serves to underscore the nature of my concern about Francine's statements to police about the six year old boy. Although G. L. c. 123A proceedings are civil, we have noted that the "potential deprivation of liberty . . . 'mandates that due process protections apply.' " *Commonwealth* v. *Bruno,* 432 Mass. 489, 502 (2000), quoting *Commonwealth* v. *Travis,* 372 Mass. 238, 250 (1977).

whether the Commonwealth advanced the evidence about the boy at the time of Given's plea, either as a victim in his own right or as evidence of the manner and means by which Given committed the offense against Francine. As such, the evidence is not related to Given's guilty plea and is unreliable hearsay. Given's guilty plea did not transform Francine into a reliable reporter for all purposes. Rather, its effect only went to that portion of her statement concerning the facts necessary to support a conviction.

In the circumstances of this case, the admission of this hearsay was prejudicial to the defendant.[2] Not only was the police report itself submitted to the jury, but the jury also saw the two reports prepared by the Commonwealth's experts, which quoted parts of the police report, including reference to the six year old boy.[3] In the *Markvart* case, the court stated:

> "Recitation of facts in that report that, although admissible, turn out not to be admitted during trial (or elicited on cross-examination of the expert) would undermine the balance we struck in *Department of Youth Servs.* v. *A Juvenile*, [398 Mass. 516, 531 (1986)]. In context, the qualified examiner's report is the equivalent of the direct examination of the expert, and the report as submitted to the jury should therefore be subject to the same constraints. Consistent with the principles articulated in *Department of Youth Servs.* v. *A Juvenile, supra* and *Commonwealth* v. *Jaime*, [433 Mass. 575, 577-578 (2001)], the qualified

---

[2]Because I find prejudicial error, I need not address the harmless beyond a reasonable doubt standard which is more favorable to the defendant. See generally *Commonwealth* v. *Vinnie*, 428 Mass. 160, 161, cert. denied, 525 U.S. 1007 (1998).

[3]Both reports contained the following paragraph, taken directly from the police report:

"[Francine] was later asked about the blue windbreaker jacket which was in plain view in the rear seat of [the defendant's] vehicle on the night it was impounded. [Francine] then told [a police officer] that it belonged to a boy which [the defendant] had inside his car during the time that [Francine] was raped. [Francine] stated to [the officer] that [the defendant] did the same things to the little boy that he had done to her. (SEE STATEMENT) This jacket was recovered and bagged as evidence."

In addition, Dr. Tomich's report mentions, a second time, that Francine "informed police that there was 'a little boy' in that car."

examiner's report must be redacted prior to its submission to the jury to exclude any facts or data that were not presented in evidence or elicited during the cross-examination of the qualified examiner. In short, an expert's direct examination is not a vehicle for the introduction of facts in evidence (other than those that the expert directly observed), and the qualified examiner's report should not be transformed into such a vehicle." *Id.* at 338-339.

In addition, as detailed in the Appeals Court's decision, the experts disagreed on several points, including whether Given suffers "from a mental abnormality or personality disorder," the likelihood of Given's reoffending, and the methodology used to predict that likelihood. *Commonwealth* v. *Given*, 59 Mass. App. Ct. 390, 396 (2003).

Furthermore, one of the Commonwealth's experts stated that the fact that Given abused Francine in a public place suggested difficulty controlling his impulses, and the other expert stated that the defendant's behavior escalated over time to include children in the community, demonstrating that Given's "behavior [was] being driven." The evidence regarding the six year old boy undermined a critical portion of the defense, one of whose experts stated that a person who preys on unfamiliar victims is more dangerous than those who molest children they know. Given's other expert stated, "[O]ne factor that has been shown to actually predict future offenses is the pattern of past offenses. That's the best predictor. What someone has done in the past is the best predictor of what they'll do in the future."

Moreover, the judge specifically told the jury, "Given's past sexual misconduct need not have led to criminal charges in order for you to consider that in determining the issues before you. You . . . may also consider any sexual misconduct charges that have been brought to your attention." As the Appeals Court noted in its decision, "The only uncharged conduct in evidence was the alleged incident relating to the six year old boy." *Commonwealth* v. *Given*, 59 Mass. App. Ct. 390, 395 (2003).

We cannot be sure that the error either did not influence or have a slight effect on the jury, *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 n.7 (1999), and cases cited; *id.* at 23 (Greaney, J., concurring), where, as here, at least some of the information

about the boy contained in the police report was submitted to the jury three times, experts testified that Given's abuse of Francine showed an escalation in his behavior, and the judge told the jury that they could consider uncharged sexual misconduct. There is little doubt as to the potency of such evidence, for the same reasons we discourage its use as impeachment evidence. See *Commonwealth* v. *Elliot*, 393 Mass. 824, 833-834 (1985), quoting *Commonwealth* v. *DiMarzo*, 364 Mass. 669, 680-682 (1974) (Hennessey, J., concurring) (use of conviction of prior sexual offense to impeach defendant has high potential for unfair prejudice in trial for sexual offense).

Accordingly, I respectfully dissent.