NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-568                                             Appeals Court

COMMONWEALTH vs. WILLIAM BRADSHAW.

No. 15-P-568.

Suffolk.      November 6, 2017. - November 14, 2018.

Present: Agnes, Maldonado, & McDonough, JJ.

Constitutional Law, Sex offender, Self-incrimination. Due
    Process of Law, Sex offender. Evidence, Sex offender,
    Prior misconduct. Practice, Civil, Sex offender. Sex
    Offender.

Civil action commenced in the Superior Court Department on
September 13, 2013.

The case was tried before Brian A. Davis, J.

Joseph M. Kenneally for the defendant.
Darcy A. Jordan, Assistant District Attorney (Nicole A.
Poirier, Assistant District Attorney, also present) for the
Commonwealth.

AGNES, J. Following a jury trial, the defendant, William

Bradshaw, was found to be a "sexually dangerous person." See

G. L. c. 123A, §§ 1, 12, 14. In accordance with the statute,

the judge committed the defendant to the Massachusetts Treatment Center (treatment center) for an indeterminate period of from one day to life.

This appeal followed and requires us to determine whether the judge erred in allowing the Commonwealth to call a witness who testified to instances of uncharged sexual misconduct committed against her by the defendant. For the reasons that follow, we conclude that such evidence was admissible because it was relevant, it did not violate restrictions on the use of character evidence, and its probative value far outweighed any danger of unfair prejudice.

Background. In September, 2013, the district attorney filed a petition to civilly commit the defendant as a sexually dangerous person pursuant to G. L. c. 123A, § 12, based on the defendant's prior adjudications of delinquency and his numerous convictions of sexual offenses. See Commonwealth v. MacLeod, 437 Mass. 286, 290-291 (2002) (describing process pursuant to G. L. c. 123A, § 12 (b), by which appropriate district attorney is notified six months in advance of release from custody of person serving sentence for any one of enumerated sexual offenses, and opportunity that said prosecutor has to determine whether prisoner is likely to be sexually dangerous, and, if so, to file petition in Superior Court alleging that prisoner is sexually dangerous, along with sufficient facts to support

same).  The filing of a petition by the district attorney under G. L. c. 123A, § 12 (b), triggers a probable cause hearing, see G. L. c. 123A, § 12 (c),[1] which, in turn may lead to a trial. See G. L. c. 123A, § 14.  See Commonwealth v. Gross, 447 Mass. 691, 693-694 (2006).

In order to prove that a person is a "sexually dangerous person," the Commonwealth must establish, by the standard of proof beyond a reasonable doubt, that the person was "convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility."  G. L. c. 123A, § 1.  In the present case, the Commonwealth presented evidence at trial of the defendant's adjudications and convictions, which consisted of a 1999 juvenile commitment for indecent assault and battery on a child

---

[1] "At a probable cause hearing conducted pursuant to G. L. c. 123A, § 12 (c), the judge is to conduct 'a two-part inquiry, one quantitative and the other qualitative.  The judge must be satisfied, first, that the Commonwealth's admissible evidence, if believed, satisfie[s] all of the elements of proof necessary to prove the Commonwealth's case.  Second, she must be satisfied that the evidence on each of the elements is not so incredible, insubstantial, or otherwise of such a quality that no reasonable person could rely on it to conclude that the Commonwealth had met its burden of proof.'"  Commonwealth v. Fusi, 91 Mass. App. Ct. 901 (2017), quoting Commonwealth v. Reese, 438 Mass. 519, 524 (2003).

under the age of fourteen[2] and two 2012 convictions for rape of a

child and indecent assault and battery on a child under the age

of fourteen.[3]  Each of the three victims in these cases were

prepubescent girls (ages three, six, and eight) who were

relatives of the defendant.

Both qualified examiners diagnosed Mr. Bradshaw with

pedophilia and antisocial personality disorder.  They also stated

that the existence of these disorders contributed to their

conclusions that he suffers from a mental abnormality[4] and a

personality disorder,[5] as defined in G. L. c. 123A, § 1.  Doctors

---

[2] This charge was the result of a 1998 incident when Mr. Bradshaw was sixteen years of age.  Mr. Bradshaw and his niece, referred to as "D," were in the bathroom when the child's mother saw him wiping what she believed to be semen off of the child, who was seated with her underwear down and her dress up.  The child said that the defendant licked her vagina and rubbed his penis against her until he ejaculated.

[3] The 2012 convictions involved two separate incidents with different victims.  In 2005, the defendant touched his eight year old cousin, referred to as "N," on her vagina on two occasions while they played video games.  In 2009, while the defendant's mother was also home, the defendant took off his daughter's clothes and covered her mouth, telling her to be quiet as he raped her.

[4] A mental abnormality is defined as "a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons."  G. L. c. 123A, § 1.

Johnson and Belle testified that Mr. Bradshaw had not sufficiently progressed in treatment, had not come to understand his offending behavior, and was likely to reoffend sexually if released from confinement. Dr. Katrin Rouse-Weir, who testified on behalf of Mr. Bradshaw, concluded that he was not sexually dangerous. She testified that though Mr. Bradshaw suffered from pedophilia and antisocial personality disorder, which satisfied the statutory definitions of mental abnormality and personality disorder, he was unlikely to reoffend. The two other qualified examiners testified that Mr. Bradshaw was not of advanced age and did not suffer from poor health, factors that are both associated with lower risks of reoffending. They also noted that Mr. Bradshaw has struggled with substance abuse which, left unaddressed, may diminish inhibitions related to offending.

Prior to trial, B.B., who also was related to the defendant, spoke with a prosecutor and an investigator and recounted the sexual abuse perpetrated against her by the defendant while she was between the ages of five and eleven, which spanned the years 1995-2001.[6] B.B.'s pretrial statements,

---

[5] A "personality disorder" is defined as "a congenital or acquired physical or mental condition that results in a general lack of power to control sexual impulses." G. L. c. 123A, § 1.

[6] The Commonwealth chose not to prosecute the defendant based on the allegations made by B.B.

which mirror her trial testimony in all material respects, were subsequently memorialized in a report that was provided to the defendant prior to the trial and submitted to the qualified examiners assigned to the case. The defendant filed a pretrial motion to exclude B.B.'s testimony for a number of reasons, including a claim that it would force the defendant to waive his privilege against self-incrimination, and that such evidence was prejudicial, irrelevant, and cumulative. The judge denied the motion.

At trial, both qualified examiners testified that B.B.'s statements constituted further evidence of the defendant's sexual attraction to prepubescent girls. In particular, these experts testified that the defendant's criminal acts committed against B.B. were evidence of the "persistence of his deviant sexual arousal toward prepubescent girls" (Dr. Johnson) and "another indicator of his inability to control his sexual impulses" (Dr. Belle). The jury ultimately found beyond a reasonable doubt that the defendant was a sexually dangerous person. He was committed to the Bridgewater State treatment center for an indefinite period ranging from one day to life.

Discussion. 1. Evidentiary issues. Much of the defendant's argument why B.B.'s testimony should not have been admitted at trial is mistakenly focused on G. L. c. 123A, § 14 (c). Specifically, the defendant argues that § 14 (c) does

not authorize the admission of evidence of uncharged criminal conduct. The statute reads as follows:

> "Juvenile and adult court probation records, psychiatric and psychological records and reports of the person named in the petition, including the report of any qualified examiner, as defined in section 1, and filed under this chapter, police reports relating to such person's prior sexual offenses, incident reports arising out of such person's incarceration or custody, oral or written statements prepared for and to be offered at the trial by the victims of the person who is the subject of the petition and any other evidence tending to show that such person is or is not a sexually dangerous person shall be admissible at the trial if such written information has been provided to opposing counsel reasonably in advance of trial."

In Commonwealth v. Markvart, 437 Mass. 331, 333-334 336 (2002), the Supreme Judicial Court held that a defendant must be convicted or adjudicated delinquent of the crime underlying a police report or witness statement as a precondition of its admissibility in evidence during a trial on a sexually dangerous person petition.[7] The defendant attempts to use the statutory language of § 14 (c), and the Court's holding in Markvart to argue that B.B.'s testimony was improperly admitted in evidence

---

[7] This general rule has since been tempered by other opinions of this court and the Supreme Judicial Court. See Commonwealth v. Given, 441 Mass. 745-746 (2004) (statement of uncharged conduct in police report admissible in sexually dangerous person proceeding as it was "unambiguously 'relat[ed] to'" circumstances of victim's abuse that resulted in guilty plea); Commonwealth v. Starkus, 69 Mass. App. Ct. 326, 333 (2007) (uncharged conduct in follow-up report by police admissible where it related to sexual offense of which defendant was ultimately convicted).

at trial because her testimony recounted sexual misconduct that did not result in a conviction. The defendant's argument is unpersuasive.

As its plain language suggests, § 14 (c) is a statutory exception to the hearsay rule that "enumerates several categories of specifically admissible evidence," Commonwealth v. Given, 441 Mass. 741, 744 (2004), that would otherwise be inadmissible hearsay. See McHoul, petitioner, 445 Mass. 143, 147 (2005); Given, supra; Markvart, supra at 335-336. See also Mass. G. Evid. § 1103 (b) (1) (2018). B.B. provided live-witness testimony based on her direct experience and, as such, her testimony was not hearsay and was not affected by § 14 (c). See Mass. G. Evid. § 801 (2018).

Although the defendant was never charged with a crime based on B.B.'s allegations, the limitation placed on the admissibility of witness statements and police reports by the court in Markvart does not limit a witness's ability to testify about uncharged sexual misconduct during a trial on a sexually dangerous person petition. Indeed, in Markvart, 437 Mass. at 337, the Court, in its discussion as to whether the material from a nol prossed case could form the basis of a qualified examiner's opinion, explained: "The fact that a prior charge was nol prossed does not mean that the underlying information on which the charge was predicated has become inherently

inadmissible. For example, the complaining witness in the nol prossed case would still be allowed to testify, as would any of the other witnesses who could have testified if that case had gone to trial." Here, B.B. did just that.

We now turn to the question of whether B.B.'s testimony, which was not admitted pursuant to a particular statutory exception to our common law of evidence, was properly admitted. The defendant's objection is framed in terms of due process and is based on two principal arguments. First, the defendant contends in general terms it is fundamentally unfair to impose on him a burden to defend against allegations of criminal activity for which he was neither charged nor convicted and that are alleged to have occurred over twenty years before his trial. This argument, in turn, calls for a consideration of the probative value of the evidence weighed against its potential for unfair prejudice. B.B.'s testimony was highly probative and its evidential value was not substantially outweighed by the danger of unfair prejudice. See Mass. G. Evid. § 403 (2018).[8]

---

[8] Because the definition of a sexually dangerous person under G. L. c. 123A, § 1, requires the Commonwealth to prove that there is a likelihood that the defendant will reoffend in the future if he is not confined to a secure facility, and all the experts who testified at trial were in agreement that the defendant suffered from pedophilia, evidence that the defendant committed sexual assaults against children other than those that resulted in his conviction was inherently relevant and probative on the question of the likelihood of reoffending in the future. As the Virginia Supreme Court recently observed in a civil

In a proceeding requiring the Commonwealth to prove that the defendant was sexually dangerous if released into society, the probative value of B.B.'s testimony was significant because, as the qualified examiners testified, it further evinced the defendant's inability to control his sexual impulses and his deviant arousal. B.B. testified that she was sexually assaulted from the mid-1990s until approximately 2001, and the defendant was convicted or adjudicated delinquent of other sexual offenses occurring between 1998 and 2009. The defendant's conduct set

---

commitment proceeding, evidence that a defendant committed sexual offenses against persons that did not result in criminal charges is not an improper use of character evidence, see Mass. G. Evid. § 404 (a) (1) (2018), because the central question before the court is not whether the defendant committed those other offenses. "Rather, it is whether, because of a mental abnormality or personality disorder, he finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts in the future." Commonwealth v. Proffitt, 292 Va. 626, 640 (2016). Because the expert witnesses in the present case testified that not only did the defendant suffer from a mental abnormality and a personality disorder, but that he was unable to control his deviant sexual impulses, it cannot be said that the defendant's commitment rests solely on proof of his bad character. See Kansas v. Hendricks, 521 U.S. 346, 357 (1997) (civil commitment cannot be based on "a mere predisposition to violence; rather, it requires evidence of past sexually violent behavior and a present mental condition that creates the likelihood of such conduct in the future if the person is not incapacitated"). See also Commonwealth v. George, 477 Mass. 331, 336 (2017) (Massachusetts law does not permit indefinite commitment of people because they are diagnosed as having psychiatric or psychological condition). Finally, the balancing test that is applicable under Mass. G. Evid. § 403 is the traditional one that calls for exclusion of relevant evidence only when its probative value is "substantially outweighed" by the danger of unfair prejudice. Contrast Commonwealth v. Crayton, 470 Mass. 228, 249 & n.27 (2014).

forth in B.B.'s testimony was thus not too remote in time to the other crimes of which the defendant was convicted or adjudicated delinquent so as to render B.B.'s testimony unfairly prejudicial.[9]

The defendant was given timely notice that B.B. would testify, and was aware of the substance of her testimony.  The defendant also had the opportunity to cross-examine B.B. and expose any weaknesses in her testimony.  He chose not to do so.  The jury were also adequately instructed that it was to determine the credibility of the witnesses who testified at trial and the weight that any particular witness's testimony should be given.

The second aspect of the defendant's due process argument is that the introduction of B.B.'s testimony unlawfully burdened his decision to testify in his own defense.  The defendant asserts that, if he had testified at trial, he would have been placed in the position of choosing between two undesirable options:  he could have asserted before the jury his right against self-incrimination under the Fifth Amendment to the

---

[9] The defendant further argues that the qualified examiners improperly considered a report that mirrored B.B.'s testimony, discussed supra, in concluding that the defendant was a sexually dangerous person.  This argument is unavailing.  The qualified examiners properly relied on the report, as the facts contained therein were admitted at trial through B.B.'s testimony.  See Markvart, 437 Mass. at 336-337, citing Department of Youth Servs. v. A Juvenile, 398 Mass. 516, 531 (1986).

United States Constitution with respect to the misconduct underlying B.B.'s testimony, or, alternatively, he could have challenged B.B.'s claims knowing that his testimony could subject him to criminal liability; the defendant ultimately did not testify at trial.

The defendant's argument is unavailing as he cites no authority to support his contention.  The prohibition against self-incrimination applies in civil proceedings, such as those brought pursuant to G. L. c. 123A, § 12, where the defendant's testimony may give rise to "future criminal proceedings." Commonwealth v. Hunt, 462 Mass. 807, 811-812 (2012).  The parties do not dispute that the defendant could have been subjected to criminal liability based on B.B.'s testimony. However, the defendant depicts his choice as one between testifying and exposing himself to cross-examination with reference to a matter that could result in a future criminal prosecution or not testifying at all.  There was another option. The defendant could have sought a ruling that he would not have to assert his privilege against self-incrimination in front of the jury unless he testified about B.B.'s allegations on direct examination.  The judge could then have then ruled on the defendant's assertion of the privilege outside the presence of the jury.  See Commonwealth v. Fischer, 433 Mass. 340, 349-350 (2001).  If the judge determined that there was a valid basis

for asserting the privilege to questions relating to B.B.'s testimony, the Commonwealth could have been prevented from questioning the defendant about the allegations set forth by B.B.

Conclusion.  For the above reasons, evidence of uncharged criminal conduct similar in nature to the conduct described in the predicate offenses and alleged to have occurred close in time to the acts that make up the predicate offenses is admissible in a proceeding to determine whether the defendant is a sexually dangerous person because it is relevant and probative on the question of the defendant's likelihood of reoffending and any danger of unfair prejudice can be avoided by appropriate instructions to the jury.

Judgment affirmed.