COMMONWEALTH *vs.* ADELBERT TUCKER, JR.

Franklin. November 24, 1986. — January 14, 1987.

Present: PERRETTA, CUTTER, & SMITH, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Evidence,* Communication between patient and psychotherapist, Sex offender, Sexual misbehavior, Expert opinion.

In a proceeding under G. L. c. 123A for an individual's commitment as a sexually dangerous person there was no error in the admission of the hearsay portions of certain psychiatric reports for the purpose of showing the basis for the opinions of two expert psychiatric witnesses who testified at the hearing, where nothing in the judge's written decision indicated that he had relied upon any of the hearsay material in reaching his conclusion that the defendant was sexually dangerous. [393-395]

In a proceeding under G. L. c. 123A for an individual's commitment as a sexually dangerous person the admission of an uncertified probation department report of the respondent's criminal offenses, although not expressly authorized by G. L. c. 123A, § 5, as then in effect, was cumulative of testimony based on a witness's personal interviews with the respondent and, thus, was not prejudicial. [395]

In a proceeding under G. L. c. 123A for an individual's commitment as a sexually dangerous person the Commonwealth's proof of the respondent's repetitive behavior, through his four convictions of sexual offenses involving young children, and of his "aggression," through evidence of "non-violent sexual advances by [an] adult[ ] upon children," together with expert testimony about the likelihood that the respondent would commit such acts in the future, was sufficient to warrant the judge in concluding, beyond a reasonable doubt, that the respondent was a sexually dangerous person. [395-396]

Nothing in the opinion of the Supreme Judicial Court in *Department of Youth Servs.* v. *A Juvenile,* 398 Mass. 516 (1986), requires that an expert opinion in part based upon facts or data not independently admissible be excluded from evidence in a proceeding under G. L. c. 123A for an individual's commitment as a sexually dangerous person. [396-398]

PETITION for commitment filed in the Superior Court Department on June 4, 1985.

The case was heard by *Lawrence B. Urbano,* J.

*M. John Schubert* for the defendant.

*Rosemary P. Tarantino,* Assistant District Attorney, for the Commonwealth.

CUTTER, J. Tucker appeals from a determination that he is a sexually dangerous person (SDP). It ordered Tucker's commitment to the Treatment Center at M.C.I., Bridgewater (the center), for an indeterminate period of from one day to life under G. L. c. 123A, §§ 1 & 6.

Tucker pleaded guilty in 1983 to four indictments for nonviolent sexual offenses against children and was sentenced to M.C.I., Walpole (now Cedar Junction), for terms of fifteen to twenty years. On February 1, 1985, the superintendent of M.C.I., Gardner, who had custody of Tucker, moved under G. L. c. 123A, § 6, to commit him to the center for sixty days for examination and diagnosis. This motion was allowed on March 6, 1985. Tucker was examined by two psychiatrists, Dr. Robert Weiner and Dr. James W. Koster, and their reports were filed on May 6, 1985. On June 4, 1985, the Commonwealth, by an assistant district attorney, filed a petition for Tucker's commitment to the center for from one day to life. After a hearing on November 15, 1985, a Superior Court judge on December 19, 1985, concluded that the Commonwealth had proved beyond a reasonable doubt that Tucker was sexually dangerous and on December 23, 1985, ordered him committed to the center. We affirm the order.

1. Several reports or records were introduced in evidence. Those which may be still relevant to the present appeal are: (a) Exhibit 1, a report of Dr. Robert F. Moore (who did not testify at the 1985 hearing) of an interview with Tucker at M.C.I., Concord, on February 18, 1983; (b) Exhibit 2, an admission summary, dated June 28, 1976, signed by Mental Health Coordinator Joel C. Frost, apparently of M.C.I., Bridgewater, with a diagnostic staff conference summary of July, 1976, attached (to which summary Tucker's counsel did not object); (c) Exhibit 4, a report by Dr. James W. Koster. Tucker objected to the admission of portions of each of these exhibits on the ground that they incorporated hearsay material, principally information from an "Official Version" of a police

report of one of Tucker's alleged offenses, viz., a report which described that offense as aggressive because of the "victim having a handkerchief stuffed into her mouth to prevent her from screaming." The admission of no other hearsay material is argued significantly (as constituting error) by Tucker in either of two briefs filed in his behalf. These reports at trial were received by the trial judge, reserving judgment on their admissibility but with the assurance to counsel that he would "state in . . . [his] findings whether" he relied on the exhibits.

(a) The judge (on December 19, 1985, which was prior to both the approval and the effective date of St. 1985, c. 752; see § 4 of that statute) filed a memorandum of decision. In his findings he excluded all of exhibit 2, except the last page, the staff conference summary. The remaining exhibits he received as admissible under G. L. c. 123A, § 5, as it then read, "for the purpose of learning the basis of the expert's opinion and for purposes involving . . . [Tucker's] mental or emotional condition . . . . The 'Official Version' is of significant assistance in interpreting . . . [Tucker's] admission." With respect to the objection to Dr. Koster's report, exhibit 4, on the ground that it contained hearsay, the judge concluded "that the hearsay material is either admissible under . . . c. 123A, § 5, or the subject was dealt with without objection in the testimony of the psychiatrists," Drs. Weiner and Koster, who testified in person.

(b) The admission of the reports (to which objection was made) for the purpose of showing the basis of the opinions of the psychiatrists (and the authors of the reports) appears to be well within the limits discussed in *Commonwealth* v. *McGruder,* 348 Mass. 712, 714-716 (1965), and *Andrews, petitioner,* 368 Mass. 468, 472-477 (1975). See *Commonwealth* v. *Barboza,* 387 Mass. 105, 108-110, cert. denied, 459 U.S. 1020 (1982). See and compare *Commonwealth* v. *Bladsa,* 362 Mass. 539, 541 (1972), substantially explained (and perhaps limited) in the *Andrews* case, at 475. There was no failure (as Dr. Moore's report shows on its face) to comply with the so-called *Lamb* warning to Tucker that his conference with Dr. Moore was not subject to a privilege. See *Common-*

*wealth* v. *Lamb,* 365 Mass. 265, 269-270 (1974). As noted in the *Andrews* case, 368 Mass. at 475, records submitted to the examining psychiatrists are to be available to the person subject to c. 123A proceedings at an early stage for study and correction by or in behalf of that person.[1]

(c) Neither Dr. Robert Weiner nor Dr. Koster gave at trial direct testimony about the "handkerchief" incident already mentioned. This matter was raised only by Tucker's counsel in cross-examination of Dr. Koster, who had mentioned the incident in his report. See *Davis, petitioner,* 383 Mass. 645, 647-648 & n.2 (1981). Dr. Koster had already testified (and his report stated) that none of Tucker's offenses involving little girls had "been violent and no victim was physically injured." As to the handkerchief incident,[2] Dr. Koster stated that Tucker had not told him of the incident and that he (Dr. Koster) could not recall whether he had talked to Tucker about it. Both Dr. Weiner and Dr. Koster in their testimony described matters which had led to the present SDP proceedings but (except for

---

[1] The *Andrews* opinion reads (at 475) "We note in passing that the records in question are official records and, therefore, possess some likelihood of trustworthiness . . . . We are aware, however, that the records contain no guarantee of accuracy, and agree with the United States Court of Appeals for the First Circuit that a person subjected to c. 123A proceedings 'must be afforded a reasonable opportunity to see, examine, and correct, where justified, the historical data which is to be used in reaching the critical opinions on his sexual dangerousness.' *Sarzen* v. *Gaughan,* 489 F.2d 1076, 1085 (1st Cir. 1973). Nevertheless, this requirement cannot in our view be stretched to prevent all use by psychiatrists of reports containing hearsay information. Indeed, the requirement that the person subjected to c. 123A proceedings be granted access to these reports itself arises from an awareness that the information in these reports may in fact be used by the examining psychiatrists in making their diagnosis. That such information, although inadmissible itself, may directly or indirectly form part of the basis for admissible expert opinion testimony is typical of much expert testimony." See note 4, *infra.*

[2] A suspected SDP, of course, may question at a commitment hearing the relevance and accuracy of information furnished to and used by a psychiatrist. He may offer pertinent expert and other testimony to show its inaccuracy. Tucker did not testify at the commitment hearing and offered no expert or other testimony. On this record there seems to be no indication of inaccuracy in the information contained in the material, made available to the experts, other than Tucker's counsel's questions to Dr. Koster on cross-examination about the "handkerchief" incident.

the cross-examination of Dr. Koster just mentioned) only on the basis of matters of record or of what Tucker had told them during interviews in which he had been warned that what he might say would not be subject to privilege.

(d) We interpret the judge's admission of the reports (objected to by Tucker's counsel) as essentially being for the purpose of ascertaining the material used in forming the opinions expressed by the experts who testified at trial and not for proof of substantive facts set forth in the reports. Such action would be justified by the cases cited in par. 1 (b), *supra,* to many of which the judge referred. The judge appropriately could have made this more explicit, but we perceive in his written decision no reliance upon the handkerchief episode (or any other hearsay in the reports) by him in reaching his conclusion.

2. A probation office "court record" listing Tucker's criminal offenses was admitted in evidence. Tucker argues that only certified copies of the court records were admissible. See *Commonwealth* v. *Atkins,* 386 Mass. 593, 600 (1982). The provisions of G. L. c. 123A, § 5, as in effect at the time of Tucker's hearing, did not expressly authorize the admission of such probation summaries. Exhibit 7 lists three convictions for sexual offenses, committed in 1962, 1969 (Connecticut), and 1975. The Commonwealth, without objection, introduced evidence of two of these (1962 and 1975) through certified copies of court records. Although there was in evidence no certified copy of the 1969 conviction, the details of this offense in effect were introduced through Dr. Koster, whose testimony was based principally on personal interviews (after *Lamb* case warnings) with Tucker. The evidence of the uncertified probation report was cumulative and could not cause prejudice to Tucker and, in any event, was admissible under the amended second paragraph of § 5, as appearing in St. 1985, c. 752, §§ 1 & 4. See note 4, *infra.*

3. Tucker argues that the Commonwealth failed to prove him to be an SDP beyond a reasonable doubt. General Laws c. 123A, § 1, requires proof of (1) repetitive or compulsive behavior by the alleged SDP, (2) either violence (against any

victim),[3] or aggression by an adult alleged SDP against a person under sixteen, and (3) a likelihood that the alleged SDP will attack or otherwise inflict injury upon an object of his attentions. See *Peterson, petitioner,* 354 Mass. 110, 117 (1968). The Commonwealth offered evidence that Tucker's behavior was repetitive through his four convictions for sexual offenses involving young children. See *Commonwealth* v. *Rodriguez,* 376 Mass. 632, 642 (1978). "Aggression" was established through proof of "non-violent sexual advances by [an] adult[] upon children." *Commonwealth* v. *Denham,* 8 Mass. App. Ct. 724, 731 (1979), where it was also recognized that the risk of injury referred to in c. 123A, § 1, included psychological and emotional trauma. See *Commonwealth* v. *Dagle,* 345 Mass. 539, 543, cert. denied, 374 U.S. 863 (1963).

4. The Commonwealth also offered expert testimony about the likelihood that Tucker will commit attacks in the future. Dr. Weiner testified that Tucker has a "compulsion which he . . . [is] unable to control." Dr. Koster testified that Tucker would be unable to stop assaulting children sexually because of "severe psychological denial," viz., "even though he knows the very serious consequences . . . he's unable to stop himself." In addition, it was reasonable for the judge to find "a concrete basis in past sexual misconduct for 'a projection of future conduct.' " *Commonwealth* v. *Jarvis,* 2 Mass. App. Ct. 8, 11 (1974), quoting *Sarzen* v. *Gaughan,* 489 F.2d 1076, 1084 (1st Cir. 1973). Tucker's record of repeated sexual offenses and the expert testimony provided substantial grounds for finding it likely that Tucker would commit future attacks. The conclusion that Tucker was an SDP was supported by the evidence.

5. Tucker's attorney contends that *Department of Youth Serv.* v. *A Juvenile,* 398 Mass. 516 (1986, hereinafter "the 1986 *DYS* case") requires the exclusion of expert evidence based on (a) facts or data not independently admissible or (b) facts or data not "a permissible basis for an expert to consider in

---

[3] This was made explicit by the amendment of c. 123A, § 1, by St. 1985, c. 752, § 1, as it had been in *Commonwealth* v. *Denham,* 8 Mass. App. Ct. 724, 731 (1979).

formulating an opinion" (see *id.* at 531). The 1986 *DYS* case arose under a different statute (G. L. c. 120, §§ 16-20) and not under c. 123A, § 5, the second paragraph[4] of which (after the 1985 amendment) provides (concerning the commitment hearing), in pertinent part, "Upon such hearing it shall be competent to introduce evidence of the person's juvenile and adult court and probation records, psychiatric and psychological records, and *any other evidence that tends to indicate that he is a sexually dangerous person. Any qualified examiner's report filed under this chapter shall be admissible in evidence at such hearing*" (emphasis supplied).

We do not discern in the 1986 *DYS* case (398 Mass. at 527-529) any intention of the Supreme Judicial Court to question the power of the Legislature expressly to authorize (as we think it has done in c. 123A, § 5, as it read both before and after the 1985 amendment) the receipt in evidence of expert opinion in part based upon evidence not otherwise admissible. See as to the pre-amendment understanding of c. 123A, Smith, Criminal Practice and Procedure §§ 2728, 2733 (1983).

The only references to G. L. c. 123A in the 1986 *DYS* case are (see 398 Mass. at 525-526) where the opinion deals with whether *Lamb* case warnings should be required by reason of the privilege created by G. L. c. 233, § 20B (involving a patient's right to keep privileged communications made to a court-appointed psychotherapist in the absence of prior warning to the patient that his communication would not be privileged). Any such privilege arises from § 20B and not from any provision of c. 123A. As we read the 1986 *DYS* case, there was

---

[4] Statute 1985, c. 752, § 1, substituted for former G. L. c. 123A a whole new c. 123A. By § 4 of c. 752, the first and third pars. of the new § 5 and all of § 6, were to "apply only to persons sentenced in offenses committed on or after the effective date of" c. 752. The second par. of § 5 thus was made applicable generally and retroactively. Prior to the 1985 statute, the portion of § 5 comparable to the portion of the 1985 version quoted in the text (see St. 1958, c. 646, § 1), read, "Upon such hearing it shall be competent to introduce evidence of the person's past criminal and psychiatric record and any other evidence that tends to indicate that he is a sexually dangerous person. Any psychiatric report filed under this chapter shall be admissible in evidence in such proceeding."

no occasion for the Supreme Judicial Court to discuss the broad permission given designated expert examiners in c. 123A, §§ 4 and 5 (both before and after St. 1985, c. 752, §§ 1 & 4), to consider various report which must be furnished to them by the public officers.[5] We find nothing in the 1986 *DYS* case which leads us to suppose that the Supreme Judicial Court in that case was giving consideration to, or overruling, the long line of decisions under c. 123A mentioned in this opinion.

*Order of commitment affirmed.*

---

[5] Section 4 (after the 1985 statute) directed the district attorney to "provide the examiners with a narrative summary of the facts, where available, of each sexual offense of which the . . . [alleged SDP] has been convicted as an adult or a juvenile."