COMMONWEALTH *vs.* PETER BOYER.

No. 02-P-392.

Barnstable. April 3, 2003. - July 31, 2003.

Present: MASON, KANTROWITZ, & DOERFER, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Evidence,* Sex offender, Hearsay, Expert opinion.

In a proceeding on a petition for commitment of the defendant as a sexually dangerous person, the judge erred in employing the wrong definition of sexual dangerousness, using the third, rather than the first, prong of G. L. c. 123A [664-666], and additionally in weighing hearsay evidence that he should not have admitted substantively [666-668]; consequently, this court remanded the case to the trial judge to determine whether the evidence, in the context of the particular facts and circumstances of the case, would support a finding that the defendant would reasonably be expected to engage in sexual offenses if not confined to a secure facility [668-669].

PETITION for civil commitment filed in the Superior Court Department on May 2, 2001.

The case was heard by *Richard F. Connon,* J.

*Deborah Beard Bader* for the defendant.

*Julia K. Holler,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. On April 9, 1984, Boyer pleaded guilty to two counts of rape of a child and to four counts of indecent assault and battery on a child under fourteen. The children involved were three of his nephews. He received a sentence of eighteen years and one day at M.C.I., Concord.[1] Paroled in 1987, he was

---

[1] "The Concord sentence was, until its abolition by the Truth-in-Sentencing Act, St. 1993, c. 432, § 20 (see 120 Code Mass. Regs. § 200.05[2] [1997]), a sentencing option widely used by Superior Court judges in the 1980's, accounting for almost half of all incarcerations of convicted male offenders . . . . It was a legal term of art that involved, even for serious felonies, the imposition of an apparently long sentence on an individual deemed capable of rehabilitation . . . to the State 'reformatory' at M.C.I., Concord, with parole

returned to prison on November 15, 1993, for a violation of its conditions. His scheduled release date from custody was May 4, 2001.

On May 2, 2001, pursuant to G. L. c. 123A, § 12, inserted by St. 1999, c. 74, § 8, the Commonwealth filed a petition for commitment of Boyer as a sexually dangerous person.[2] At the preliminary hearing, probable cause was found and Boyer was temporarily committed for a sixty-day evaluation at the Massachusetts Treatment Center at Bridgewater for the purpose of examination and diagnosis.[3] Two examiners filed written reports of their examinations, diagnoses, and recommendations. The Commonwealth, in a timely fashion, moved for trial.[4] After a jury-waived trial, the judge found the defendant a sexually dangerous person and committed him to a treatment center for an indeterminate period of time.[5]

Boyer appeals, alleging the judge erred by applying the incorrect statutory definition of sexually dangerous person and erred by admitting unlimited substantive hearsay. He also alleges

---

eligibility arising after a small fraction . . . of the stated sentence pursuant to parole board policies and regulations." *Commonwealth* v. *Thurston*, 53 Mass. App. Ct. 548, 554-555 (2002) (citations omitted).

[2]"When the district attorney . . . determines that the prisoner . . . is likely to be a sexually dangerous person as defined in section 1, the district attorney . . . may file a petition alleging that the prisoner . . . is a sexually dangerous person and stating sufficient facts to support such allegation. . . ." G. L. c. 123A, § 12(*b*).

"Upon the filing of a petition under this section, the court in which the petition was filed shall determine whether probable cause exists to believe that the person named in the petition is a sexually dangerous person." G. L. c. 123A, § 12(*c*).

[3]Once probable cause is found that the person named in the petition is a sexually dangerous person, that person is committed to a treatment center for not more than sixty days. G. L. c. 123A, § 13(*a*). At the treatment center, the person is then examined and diagnosed under the supervision of two qualified examiners. G. L. c. 123A, § 13(*a*).

[4]Within fourteen days of the filing of the report, the Commonwealth must petition the court for a trial. G. L. c. 123A, § 14.

[5]"If after the trial, the [fact finder] finds unanimously and beyond a reasonable doubt that the person named in the petition is a sexually dangerous person, such person shall be committed to the treatment center . . . for an indeterminate period of a minimum of one day and a maximum of such person's natural life until discharged pursuant to the provisions of section 9." G. L. c. 123A, § 14(*d*), inserted by St. 1999, c. 74, § 8.

that the civil commitment violates due process principles.[6]

*General Laws c. 123A.* The definition of a sexually dangerous person is divided into three separate prongs. The Commonwealth is obligated to prove beyond a reasonable doubt that only one prong applies to a defendant. A sexually dangerous person is one who has been

> (i) "convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility;" or

> (ii) "charged with a sexual offense and was determined to be incompetent to stand trial and who suffers from a mental abnormality or personality disorder which makes such person likely to engage in sexual offenses if not confined to a secure facility; or"

> (iii) "previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of 16 years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires." G. L. c. 123A, § 1, inserted by St. 1999, c. 74, § 6.

The trial judge, in writing his findings, believed that the probable cause determination, made pursuant to § 12(*c*), qualified as a prior adjudication of sexually dangerous, and applied the third prong. This was error, as the Commonwealth concedes. The determination that probable cause exists, made pursuant to § 12(*c*), is not an adjudication that he is a sexually dangerous person. Rather, it is the first step of a multi-step process that includes, as stated above, the finding of probable cause,

---

[6]Here, we simply note that neither party included the trial exhibits as part of the record appendix. The only documents we received, besides the transcripts, were the docket sheets for this petition and the memorandum of decision from the superior court.

temporary commitment to a treatment center, psychological examinations and trial. G. L. c. 123A, §§ 12-14.

Boyer argues that since the improper standard was used (the third prong), automatic reversal is mandated. Conversely, the Commonwealth asserts that, although the judge utilized the wrong standard, there was undisputed evidence presented at trial that met the correct standard (the first prong) and therefore the determination that the defendant was a sexually dangerous person was correct as a matter of law.

The position of the Commonwealth has some validity. It is clear upon reading the transcript that the Commonwealth indeed focused upon, presented evidence to, and argued the proper standard, that a "sexually dangerous person is one who has been . . . convicted of . . . a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses . . . ." G. L. c. 123A, § 1. It is uncontested that the defendant (1) had a prior conviction for a sexual offense and (2) suffers from a mental abnormality or personality disorder.[7]

The road now, however, turns bumpy.[8] The first prong asks whether that "mental defect or personality disorder . . . makes the person likely to engage in sexual offenses if not confined to a secure facility?" The judge found Boyer's behavior repetitive and compulsive in accordance with defining a sexually dangerous person under the third prong. However, in doing so, the judge also found Boyer's risk of reoffending "moderate."[9] Additionally, it is unclear what impact the judge's erroneous belief of a prior finding of sexually dangerous had upon his ultimate decision. What is clear is that the judge placed emphasis on

---

[7]Dr. Murphy, one of the Commonwealth's experts, diagnosed Boyer with pedophilia and antisocial personality disorder. The expert testifying for Boyer, Dr. Kiley, agreed on cross-examination that Boyer falls within the definition of antisocial personality disorder and pedophilia and that he suffers from a mental abnormality or disorder. A third expert, Dr. Silverman, also testified on behalf of the Commonwealth. However, his testimony was discounted in its entirety "because of his failure to conduct a personal examination of the defendant."

[8]The Commonwealth's reliance, in part, in its brief, upon Dr. Silverman's testimony, is improper as the evidence was struck.

[9]The standard to be employed is noted in *Commonwealth* v. *Boucher*, 438 Mass. 274 (2002). See *infra.*

evidence that was improperly admitted, an issue that we now address.

*Hearsay.* The judge in his findings gave special weight to a statement contained in a parole report indicating that Boyer asked his girlfriend's two year old daughter, as she was sitting on his lap, if she "was horny."[10] The Commonwealth asserts that the evidence was admissible under G. L. c. 123A, § 14(*c*).[11]

The use of hearsay evidence is guided, in part, by § 14(*c*). That section lists a litany of classic hearsay evidence, e.g., probation records, police reports, psychiatric reports, etc., which "shall be admissible." While parole reports are not listed specifically, they fit comfortably within the catch-all phrase found at the end of the statute — "and any other evidence tending to show that such person is or is not a sexually dangerous person . . . ."

While § 14(*c*) trumps a hearsay objection to the admission of the report, still remaining is the issue of hearsay within the report. Traditional rules of evidence apply. When there is hearsay within hearsay it is commonly referred to as totem pole hearsay. "Generally, evidence based on a chain of statements is admissible only if each out-of-court assertion falls within an exception to the hearsay rule." *Commonwealth* v. *McDonough*, 400 Mass. 639, 643 n.8 (1987) (citations omitted).

If there is not an exception for each statement, the hearsay is

---

[10]The judge wrote: "The past sexual misconduct although confined to convictions arising out of several acts against three of his nephews has been determined to be repetitive or compulsive sexual misconduct *especially when considering* the non-charged offense or the statement to a two year old girl who sat upon the defendant's lap and was asked by the defendant whether or not she was 'horny' " (emphasis added).

[11]"Juvenile and adult court probation records, psychiatric and psychological records and reports of the person named in the petition, including the report of any qualified examiner, as defined in section 1, and filed under this chapter, police reports relating to such person's prior sexual offenses, incident reports arising out of such person's incarceration or custody, oral or written statements prepared for and to be offered at the trial by the victims of the person who is the subject of the petition and any other evidence tending to show that such person is or is not a sexually dangerous person shall be admissible at the trial if such written information has been provided to opposing counsel reasonably in advance of trial." G. L. c. 123, § 14(*c*), inserted by St. 1999, c. 74, § 8.

not admissible substantively, so long as an objection is lodged.[12] However, it may be admissible if used for an alternative purpose, i.e., by an expert in forming his opinion. See G. L. c. 123A, § 13(*b*)[13]; *Commonwealth* v. *Markvart*, 437 Mass. 331, 339 (2002).

In *Commonwealth* v. *Markvart*, the Supreme Judicial Court was confronted with the issue whether hearsay contained in police reports and witness statements from a nol prossed complaint was admissible at trial pursuant to G. L. c. 123A, § 14(*c*), either directly or through expert opinion. The court held "that G. L. c. 123A, § 14(*c*), does not render police reports and witness statements from nol prossed cases admissible at trial. They may be provided to a qualified examiner, and a qualified examiner may rely on them as the basis for an expert opinion, consistent with the requirements and limitations of *Department of Youth Servs.* v. *A Juvenile*, [398 Mass. 516 (1986)]." *Commonwealth* v. *Markvart, supra* at 339.

*Department of Youth Servs.* v. *A Juvenile* counsels that an expert is permitted "to base an opinion on facts or data not in evidence if the facts or data are independently admissible and are a permissible basis for an expert to consider in formulating an opinion." *Id.* at 531.

We cannot ascertain, as we do not have the parole report, the source of the hearsay. If it were an identifiable individual, the statement would appear to be independently admissible through the appropriate witness (e.g., the child's mother or whoever

---

[12] "It is well established that hearsay evidence admitted without objection may be considered by the [fact finder] and may be given any probative value it possesses." *Commonwealth* v. *Stewart*, 398 Mass. 535, 543 (1986) (citation omitted).

[13] "The court shall supply to the qualified examiners copies of any juvenile and adult court records which shall contain, if available, a history of previous juvenile and adult offenses, previous psychiatric and psychological examinations and such other information as may be pertinent or helpful to the examiners in making the diagnosis and recommendation. The district attorney or the attorney general shall provide a narrative or police reports for each sexual offense conviction or adjudication as well as any psychiatric, psychological, medical or social worker records of the person named in the petition . . . ." G. L. c. 123A, § 13(*b*), inserted by St. 1999, c. 74, § 8.

heard the comment). See *Commonwealth* v. *Markvart, supra* at 337. Whether, then, the statement served as a permissible basis for the expert to consider appears, in this case, to be a given. Indeed both experts considered the statement, which helped them form their respective opinions.

In sum, that hearsay contained in a report may be used for one purpose — here, as a basis for the expert's opinion — does not necessarily mean that it may be used for all substantive purposes by a factfinder who has to make a finding beyond a reasonable doubt. See *Commonwealth* v. *Tucker*, 23 Mass. App. Ct. 391, 393-395 (1987). Assuming independent admissibility, if the admission of the totem pole hearsay contained in the report was for the purpose of ascertaining the basis of the examiners' opinions, and not for the substantive facts set forth, there is no error. See *id.* at 395. However, it is error where, as here, the judge, over objection, relied upon the statement as proven and substantive. It was improper for the judge to consider it in the manner he did.[14]

*Conclusion.* "With respect to the weighing and crediting of testimony admitted at trial, we will not substitute our judgment for that of the trier of fact. We do, however, scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts." *Commonwealth* v. *Boucher*, 438 Mass. 274, 275-276 (2002) (citation omitted). The trial judge employed the wrong definition of sexual dangerousness, using the third, rather than the first, prong of the statute. He additionally weighed hearsay evidence that should not have been admitted substantively. As such, the judgment in this matter is vacated and the case is "remanded to the trial judge to determine whether the evidence, in the context of the particular facts and circumstances of the case, supports a finding that [Boyer] would reasonably be expected to engage in sexual offenses if not confined to a secure facility." *Commonwealth* v. *Boucher, supra*

---

[14]If there had been testimony from a witness that he or she heard the defendant make the contested statement to the two year old girl, the judge would have been free to use it substantively and could give it whatever weight he deemed appropriate.

at 281. See *Commonwealth* v. *Bladsa*, 362 Mass. 539, 540-542 (1972); *Thompson, petitioner*, 5 Mass. App. Ct. 282, 284 (1977).[15] Pending that determination, the trial judge's order of confinement shall stand.

*So ordered.*

---

[15]Given the issues addressed and the passage of time, the judge, in his discretion, may reopen the case, including, if he so desires, reopening the evidence.