JAMES McHOUL, JR., petitioner.

Suffolk. May 2, 2005. - September 8, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender. Evidence,* Sex offender, Hearsay, Medical record, Medical report, Police report. *Practice, Criminal,* Instructions to jury.

At the trial of a petition for examination and discharge filed by the petitioner, who had been committed to the Massachusetts Treatment Center as a sexually dangerous person, the judge properly admitted in evidence testimony from expert witnesses about out-of-court statements the petitioner had made to others and observations of the petitioner's conduct made by others on which the experts had based their opinions, where those statements and observations were reflected in various records and reports that had been admitted in evidence, thus making it permissible for the expert witnesses to refer to that evidence in their own expert testimony [146]; moreover, the judge properly admitted in evidence certain records and reports that contained "totem pole" hearsay, where those reports were among those made admissible by statute, notwithstanding that they contained hearsay [146-153]. SPINA, J., concurring in part and dissenting in part, with whom COWIN, J., joined.

At the trial of a petition for examination and discharge filed by the petitioner, who had been committed to the Massachusetts Treatment Center as a sexually dangerous person, the judge properly instructed the jury that the injury that the Commonwealth was required to prove beyond a reasonable doubt that the petitioner would be likely to inflict upon a potential victim because of his uncontrolled or uncontrollable desires could be psychological, mental, or emotional trauma as well as physical injury [153-155]; further, the judge's single reference to "impulsive" misconduct could not overpower the accurate and complete jury instruction as to the elements of sexual dangerousness [155-156], and the petitioner, by failing to request certain instructions or objecting to certain instructions, waived arguments on appeal as to those instructions [156-157].

This court did not reach arguments raised for the first time on appeal or not properly brought. [157-158]

PETITION filed in the Superior Court Department on October 2, 2000.

The case was tried before *Sandra L. Hamlin,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David Hirsch,* Committee for Public Counsel Services, for the petitioner.

*Mary P. Murray* for the Commonwealth.

*William R. Keating,* District Attorney, & *Tracey A. Cusick & Varsha Kukafka,* Assistant District Attorneys, for District Attorney for the Norfolk District, amicus curiae, submitted a brief.

SOSMAN, J. In 1974, James McHoul, Jr. (petitioner), was committed to the Massachusetts Treatment Center (treatment center) as a "sexually dangerous person," pursuant to G. L. c. 123A, §§ 1 et seq., as appearing in St. 1958, c. 646, § 1. See *Commonwealth* v. *McHoul,* 372 Mass. 11 (1977). See also *McHoul* v. *Commonwealth,* 10 Mass. App. Ct. 878 (1980). On October 2, 2000, he filed a petition for examination and discharge. G. L. c. 123A, § 9. After a trial at which the petitioner did not testify, the jury returned a verdict that the petitioner remained a sexually dangerous person. The petitioner now challenges various evidentiary rulings, including the admission of evidence containing "totem pole" (or "layered") hearsay; certain jury instructions, including an instruction that potential future injury to adult victims is not limited to physical injury; the sufficiency of the evidence; and the validity of his initial commitment. We transferred the case here on our own motion, and now affirm.[1]

1. *Facts.* The jury could have found the following facts. The petitioner, born in 1943, has a lengthy history of sexual violence and aggression. While an adolescent, he once fondled his mother and attempted to engage her sexually. In 1959, he was sent to the Judge Baker Guidance Clinic for groping and attempting to kiss a nineteen year old woman. When he was seventeen years old and working as a messenger delivering telegrams, he sexually assaulted a woman in her home. He was acquitted of the resulting charge but later admitted committing the offense.

At age nineteen years, the petitioner broke into several apartments looking for women to assault sexually. In one case, he entered an unlocked apartment occupied by two young women, hid in a closet until one woman left, then sexually assaulted the other at knife point. He subsequently was charged with assault

---

[1] We acknowledge the amicus brief filed by the district attorney for the Norfolk district.

with intent to rape and breaking and entering with intent to rape. In 1964, he pleaded guilty to these offenses and was placed on supervised probation.

In 1966, while undergoing a psychiatric evaluation at Boston State Hospital as required under the terms of his supervised probation, the petitioner left the hospital grounds in violation of his probation, entered a randomly selected apartment, assaulted a woman lying on her bed, and choked her until she was unconscious, fleeing only when he heard the woman's mother in the apartment. As a result of this incident, he was convicted of assault with intent to commit rape, and breaking and entering a dwelling with intent to commit rape. He was sentenced to from twenty-five years to thirty years in prison. In 1974, a judge in the Superior Court adjudicated the petitioner to be a sexually dangerous person and committed him to the treatment center for a term of from one day to life.

The petitioner's long-standing medical problems include "a mild arrested hydrocephalus with a question of associated brain damage and psychosis." He has a history of mental illness dating from the 1960's, with repeated diagnoses of schizophrenia, schizoid personality disorder, and sociopathic disorder. Although he has been placed on various psychotropic medications, the petitioner continues to exhibit signs of major mental illness that, together with his intermittent refusal to take his prescribed medications, has complicated his progress in sex offender treatment. His fantasies about raping women, including female staff at the treatment center, persist, as does his sexual misconduct or inappropriate behavior toward other inmates and his female therapists. The petitioner has acknowledged that one reason he has not actually assaulted any women at the treatment center is because "they would lock my silly butt upstairs, jack me up on psychotropic medication." He has admitted that he would act out on his aggressions toward women if he thought he could get away with it.

The petitioner presents a number of risk factors that, taken together, are associated with a very high risk of reoffending. These include: (1) a large number of prior sex offenses, (2) sex offenses against strangers, (3) commission of a sex offense at a relatively young age, (4) deviant sexual arousal and sex-

ual arousal to violence, (5) failure to complete treatment, (6) antisocial behavior, (7) a negative relationship with his mother, (8) poor judgment and impulse control, (9) cognitive distortions about women and his own behavior, and (10) limited motivation to change his behavior. Despite years of treatment, he has been unable to overcome or offset these risk factors.

2. *Discussion.* a. *Hearsay.* The petitioner argues that the judge erroneously admitted in evidence two classes of inadmissible hearsay. First, he argues that the experts should not have been permitted to testify to the jury about out-of-court statements the petitioner made to others and observations of the petitioner's conduct made by others on which the experts based their opinions. *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 531 (1986). However, those statements and observations were reflected in various records and reports that were admitted in evidence, thus making it permissible for the expert witnesses to reference that evidence in their own expert testimony. See *Commonwealth* v. *Markvart*, 437 Mass. 331, 338 (2002); *Commonwealth* v. *Jaime*, 433 Mass. 575, 577-578 (2001).

Second, the petitioner contends that certain of the records and reports at issue should not have been admitted in evidence because they contained totem pole hearsay. In particular, he objected to and challenges on appeal the introduction of "group notes" and annual treatment reports of the treatment center (which contained the petitioner's descriptions of sexual assaults for which he had not been convicted and his descriptions of his feelings toward the victims of his sexual assaults), and "observation and behavior reports" concerning his actions at the treatment center. See *Commonwealth* v. *Markvart, supra* at 335 ("hearsay not otherwise admissible under the rules of evidence is inadmissible at the trial of a sexually dangerous person petition unless specifically made admissible by statute"). There was no error, as these reports are among those made admissible by statute, notwithstanding that they contain hearsay.

The sexually dangerous person statute provides that specifically identified documents and reports "shall be admissible" at trial of a petition for examination and discharge from the treatment center. G. L. c. 123A, §§ 6A, 9. Under § 9, either side

may introduce in evidence the report of a qualified examiner, the petitioner's "juvenile and adult court and probation records," the petitioner's "psychiatric and psychological records," and the Department of Correction's annual progress report pertaining to the petitioner. Under § 6A, either side may introduce in evidence the report of the community access board evaluating the petitioner for participation in the community access program, and that board's annual report concerning the petitioner's current sexual dangerousness. With respect to a petition by the Commonwealth seeking to commit a defendant as a sexually dangerous person, G. L. c. 123A, § 14 (c), similarly lists a variety of records and documents that "shall be admissible" (provided that they have been made available to the opposing side in advance of trial): probation records, "psychiatric and psychological records and reports," reports from qualified examiners, "police reports relating to such person's prior sexual offenses," incident reports during the person's incarceration or custody, and "oral or written statements prepared for and to be offered at the trial by the [defendant's] victims."[2]

Absent these statutory provisions, such documents would ordinarily be excluded as inadmissible hearsay. However, the Legislature has the power to prescribe rules of evidence superseding any contrary common-law rule. See *Beeler* v. *Downey*, 387 Mass. 609, 614-615 (1982), quoting *Holmes* v. *Hunt*, 122 Mass. 505, 516-517 (1877). We have long recognized that the admissibility of the various records and reports in sexually dangerous person proceedings represents " 'a very radical departure' from ordinary evidentiary rules," *Andrews, petitioner*, 368 Mass. 468, 473 (1975), quoting *Commonwealth* v. *McGruder*, 348 Mass. 712, 715 (1965), cert. denied, 383 U.S. 972 (1966); but we have repeatedly applied the evidentiary rules prescribed by the Legislature for such proceedings. See *Com-*

---

[2]Both § 9 and § 14 (c) contain a catchall provision allowing the admission of "any other evidence" tending to show whether the person is a sexually dangerous person. We have declined to read those catchall provisions in a way that would eliminate all rules of evidence for purposes of sexually dangerous person proceedings. See *Commonwealth* v. *Bladsa*, 362 Mass. 539, 541 (1972). However, in that case, the court expressly recognized that the specific documentary items identified and made admissible by statute remained admissible. *Id.* at 540-541.

*monwealth* v. *Given*, 441 Mass. 741, 744-745, cert. denied, 543 U.S. 948 (2004); *Commonwealth* v. *Rodriguez*, 376 Mass. 632, 641 (1978); *Andrews, petitioner, supra* at 472-475. The petitioner has given us no cause to change course.

His contention — that courts must subject the contents of each document to an analysis for totem pole hearsay, with the statutory provision of admissibility curing only the hearsay problem of admitting the evidence in the form of a written report — has been rejected implicitly in our prior cases.[3] With respect to a former version of the statute that allowed a "psychiatric report" in evidence, the court noted that the statute permitted "admission of reports *incorporating or based on hearsay*" (emphasis added). *Commonwealth* v. *Rodriguez, supra* at 638 n.10. More recently, in *Commonwealth* v. *Given, supra* at 745, we observed that the police reports made admissible by § 14 (*c*) effectively allowed in evidence not only those facts admitted by the defendant in a later plea colloquy but also "other information in police reports — including any statements describing the defendant's conduct and the circumstances attendant to the offense." Although the court was divided as to whether references to any uncharged conduct in such a report had to be excluded because it was not a prior sexual offense, *id.* at 749-751 (Ireland, J., dissenting), there was no suggestion that the "statements describing the defendant's conduct and the circumstances attendant to the offense" set forth in the report had to come from sources that had their own basis for exclusion from the hearsay rule.[4] *Id.* at 745.

Adoption of the petitioner's interpretation of these statutory

---

[3]Many of the statements to which the petitioner objected were his own, and, as such, admissible under the general rules of evidence as admissions of a party opponent through the testimony of a person who witnessed them. See *Commonwealth* v. *Marshall*, 434 Mass. 358, 365 (2001). Here, witnesses to the petitioner's various statements authored reports reflecting those statements, with the reports themselves made admissible by statute. Thus, even if we were to scrutinize the reports for and require redaction of any totem pole hearsay contained therein, that analysis would not result in the exclusion of the petitioner's own admissions.

[4]The only precedent to the contrary is *Commonwealth* v. *Boyer*, 58 Mass. App. Ct. 662, 666-667 (2003). There, the judge at a jury-waived trial had admitted in evidence a parole report (which is *not* a form of report specifically approved for admission by the statute), and it apparently contained hearsay. However, the record before the Appeals Court did not include a copy of that

provisions would greatly complicate and, in many instances, completely frustrate, the trial of sexually dangerous person cases. The authors of the various documents identified in §§ 6A and 9 (and the comparable provisions of § 14 [c]) are oftentimes not eyewitnesses to everything put in their reports, and their reports commonly include the gathering of information from multiple sources, few (if any) of which will qualify for some independent exception to the hearsay rule. For example, the "police reports relating to such person's prior sexual offenses" made admissible under § 14 (c) will contain information from numerous sources beyond the direct observation of the officer who made the report — information gleaned from witnesses at the scene, or information provided by other officers working on the case, are routinely included in such reports. Similarly, the community access board's evaluation of the

---

report and it therefore could not assess the source of the ostensible hearsay statement or statements in that report. *Id.* at 667. The matter was remanded for further findings by the judge (who had, in any event, applied an inaccurate definition of "sexually dangerous person"). *Id.* at 664-668. The defendant requested further appellate review (on the theory that he was entitled to a new trial, and not just a remand for further findings). The Commonwealth, which had conceded the error in the judge's application of the wrong "prong" of the definition of sexually dangerous person, *id.*, did not seek further review on the evidentiary issue. We denied the defendant's application for further appellate review, 440 Mass. 1103 (2003). To the extent that the *Boyer* case may be read to hold that the specifically identified reports and records made admissible by G. L. c. 123A, §§ 6A, 9, and 14 (c), must still undergo scrutiny and redaction for totem pole hearsay contained therein, we now overrule it.

We dealt with a separate and distinct issue pertaining to the introduction of the qualified examiner's report in *Commonwealth* v. *Markvart*, 437 Mass. 331, 338-339 (2002). Although the statute makes the qualified examiner's report admissible (see G. L. c. 123A, §§ 9 and 14 [c]), we noted that the qualified examiner's report functioned as the equivalent of an expert witness's direct testimony. *Id.* at 338. Just as an expert witness cannot testify on direct examination concerning facts not in evidence, we held that the qualified examiner's report could not be used as a vehicle for putting before the jury any facts that were not in evidence. *Id.* at 338-339, citing *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 531 (1986), and *Commonwealth* v. *Jaime*, 433 Mass. 575, 577-578 (2001). To do otherwise would allow the parties to supply a qualified examiner with all sorts of evidence and use the qualified examiner's report to get that evidence before the jury without having to introduce the evidence itself. The *Markvart* case does not concern the hearsay rule, or the application of layered hearsay principles to the documents and records that G. L. c. 123A makes admissible. It concerns the use of an expert's report containing facts not in evidence.

petitioner, which is made admissible under § 6A, will contain information from a whole host of sources — indeed, very little of that assembled information will consist of the reporter's own observations of the petitioner. Incident reports pertaining to a defendant's conduct while incarcerated, made admissible by § 14 (*c*), will commonly contain hearsay. While such incident reports may contain the reporting officer's own observations, and may contain admissions from the person being tried (both of which would satisfy a totem pole hearsay analysis), they will also contain (and may make no sense without) statements of other inmate witnesses, or information supplied by other correction officers investigating the incident.

The redaction exercise pressed on us by the petitioner would eliminate vast amounts of the information contained in the reports that the statute makes admissible, and would often leave a report so riddled with holes and gaps as to be useless. When the Legislature identified the specific records and reports that were to be admissible in sexually dangerous person proceedings, it did so with full knowledge that they routinely contain information derived from hearsay sources. Having made such records and reports "admissible," the Legislature did not intend that the documents be reduced to isolated shreds of partial information that would result from the application of hearsay rules to each individual entry in the documents.

Indeed, with regard to proceedings under § 14, one of the obvious purposes in making evidence such as police reports concerning prior sexual offenses admissible is so that the witnesses who supplied the information that led to the defendant's conviction or plea do not have to be called back to court, years later at the conclusion of his sentence, to reiterate the details as to how the sexual offense was perpetrated. Or, in proceedings under § 9, where (as here) the petitioner has a long history at the treatment center, the use of records and reports reflecting that history avoids the need to summon treatment center personnel (who may no longer be available) to court to testify concerning the course of the petitioner's treatment and behavior at the center. If, however, those reports were required to be reduced to only those entries constituting the report maker's own observations and the petitioner's own admissions (the only hearsay

exceptions likely to be applicable to the specific contents of such records, see note 3, *supra*), as the petitioner suggests, then vast amounts of that history would have to be provided by live witnesses. For both sides in sexually dangerous person proceedings, determination of a person's present sexual dangerousness often entails consideration of events that transpired long ago, or that otherwise may be difficult to reconstruct through live testimony.[5] Where the facts of those prior events have been preserved in records and reports that the Legislature has approved for this purpose, redaction of the records and reports to satisfy hearsay objections is potentially unfair to both sides.[6]

Despite containing hearsay, the specific types of records and reports that are made admissible by statute have a considerable degree of reliability for these purposes. Psychiatric records and treatment records are a form of medical records, which have long been viewed as reliable and are routinely admitted in evidence in other types of cases. See G. L. c. 233, § 79G. Police reports of prior sexual offenses are allowed in evidence, but only where the defendant was convicted of the offense, with the conviction thus providing some corroboration of at least the gist

[5]The concern expressed by Justice Spina in his concurring opinion — that it would somehow be "incongruous" to allow totem pole hearsay to be admitted through someone's report but not allow the person to testify to that totem pole hearsay, *post* at 159, misses the point. The point is that the report writers will not have to testify at all, as the information they recorded, much closer in time to the relevant events, can be admitted through their reports.

[6]For example, there is no hearsay exception that would allow a party to introduce his own prior statements in the various reports and records; if offered by the petitioner, his own statements would not be the admission of a party opponent. A § 9 petitioner or § 14 defendant could not introduce any records or reports unless his statements were redacted therefrom or offered solely for some nonhearsay purpose.

Or, as another example, an inmate whose disciplinary history includes involvement in some altercation may wish, much later at his § 14 trial, to introduce the incident report (admissible under § 14 [c]) indicating that his involvement was minimal, that he was seeking to protect the original victim, or that the incident had no sexual component whatsoever. Witness statements reflected in the incident report would not qualify for any exception to the hearsay rule and would have to be struck from the report. While the defendant could testify to his version of what transpired (a version that might be given little weight due to its self-serving appearance), he would not be able to introduce an incident report reflecting the fact that all participants and witnesses corroborated his version.

of the report. See *Commonwealth* v. *Markvart*, 437 Mass. 331, 335-336 (2002) (§ 14 [*c*] only admits police reports pertaining to offenses of which defendant was convicted, not reports pertaining to nol prossed charges). See also *Commonwealth* v. *Given*, 441 Mass. 741, 747-748 (2004) ("fact of conviction is a powerful independent indicator of the reliability" of statements describing offense in police report). Other records made admissible by these statutory sections are records kept by the courts or other public agencies and officials.[7] These records and reports provide information that is especially pertinent to the assessment of a person's mental condition and present sexual dangerousness; that information is often difficult or impossible to present at trial by other means; and the information has been preserved in records of a type that the Legislature views as sufficiently reliable for these purposes.[8] We accept the Legislature's determination at face value, and do not superimpose our own rules of evidence contrary to the Legislature's determination.

The petitioner's proposed interpretation — that reports made admissible by statute are only admissible to the extent that they do not themselves contain hearsay — has been rejected elsewhere. The Supreme Court of California, addressing a statutory provision making various documents admissible in the equivalent of our sexually dangerous person proceedings, held that the Legislature's determination to allow the admission of documents of a type that commonly contain hearsay "necessarily endorsed the use of multiple-level-hearsay statements that do not otherwise fall within a hearsay exception." *People* v. *Otto*, 26 Cal. 4th 200, 208 (2001). To do otherwise, the court noted,

[7]Given the reliability of the categories of documents made admissible by the statute, the intimation in the concurring opinion that their admission might violate due process is unwarranted. *Post* at 159-160.

[8]In this context, the information contained in the records and reports is used by qualified examiners and experts in forming their opinions as to the sex offender's mental condition and likelihood of reoffense. Indeed, the statute provides that these same records and reports are to be provided to the qualified examiners. See G. L. c. 123A, § 9 (qualified examiner to be provided "all records of the person being examined"); § 13 (*b*) (qualified examiner to be provided with respondent's juvenile and adult court records, psychiatric and psychological records, police reports pertaining to prior sexual offenses, and incident reports during incarceration). By making those same records and reports admissible at trial, the Legislature made clear that the jury could see at least that portion of what the expert had used in forming an opinion.

would contravene the Legislature's apparent intent to avoid recalling victims and witnesses to the original crime or crimes (whose statements in the various listed reports would be hearsay). *Id.*

The same concerns are applicable here, and our statute allowing the admission of records and reports that, by their nature, often include the gathering of information from a variety of hearsay sources signifies the Legislature's determination that such hearsay should be admitted in sexually dangerous person proceedings. When the Legislature identified, with considerable precision, the specific reports and records that were to be admissible in sexually dangerous person proceedings, it did not intend that only snippets of those reports and records could be introduced. Judges conducting trials under either § 9 or § 14 need not scrutinize each report and record being offered under the statute's evidentiary provisions and strike out every hearsay statement contained therein. That exercise, if performed, would make mincemeat of the documents that the Legislature deemed admissible. We therefore find no error in the admission of the records and reports pertaining to the petitioner, as they were properly admitted pursuant to §§ 6A and 9.

b. *Instruction on nonphysical injury.* Conformably with the statutory definition of "sexually dangerous person" applicable to a § 9 hearing,[9] the judge instructed the jury that the Commonwealth must prove beyond a reasonable doubt that, if the petitioner were discharged, "he would be likely to commit future acts of sexual misconduct or inflict injury upon a potential victim because of his uncontrolled or uncontrollable desires." She then instructed, over objection, that "[t]he potential injury can but doesn't have to be physical injury. If you conclude beyond a reasonable doubt that the petitioner is likely to inflict psychological, mental or emotional trauma upon his potential

---

[9]General Laws c. 123A, § 1, defines "[s]exually dangerous person," for purposes of a § 9 hearing, as "any person who has been . . . (iii) previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of 16 years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

victims, then you may conclude that he is likely to inflict injury upon his potential victims." There is no dispute that the class of potential victims in this case consists only of adults — the petitioner's history of sexual misconduct does not include any offenses against children, and there was no evidence suggesting a likelihood that he would attack children in the future. The issue on appeal is whether the statutory term "likely to . . . inflict injury," when used with respect to potential adult victims, is confined to physical injury.

The petitioner contends that the likelihood of nonphysical injury may be considered in a § 9 proceeding only where the potential future victims would be children. In support, he points to the language of G. L. c. 123A, § 1, which requires that the petitioner's "general lack of power to control his sexual impulses" be evidenced by "repetitive or compulsive sexual misconduct by either *violence* against any victim, or *aggression* against any victim under the age of 16 years" (emphasis added). While "aggression" may include "psychological, mental or emotional" injury against a potential child victim, the petitioner avers, "violence" connotes physical injury. He further points to the fact that the sexually dangerous person cases that have relied on a potential for nonphysical injury have involved children. See *Commonwealth* v. *Dagle*, 345 Mass. 539, 543, cert. denied, 375 U.S. 863 (1963); *Commonwealth* v. *Denham*, 8 Mass. App. Ct. 724, 731 (1979).

We are unpersuaded. "Where a statutory term is undefined, it must be understood in accordance with its generally accepted plain meaning." *Commonwealth* v. *Boucher*, 438 Mass. 274, 276 (2002). The term "injury" has not been defined in the statute, but the word is hardly opaque. Webster's Third New Int'l Dictionary 1164 (1993) defines "injury" in its most common sense to mean "an act that damages, harms, or hurts: an unjust or undeserved infliction of suffering or harm: wrong." The definition of "injury" is not limited to physical harm. While the Legislature may have required evidence of different types of past sexual misconduct with respect to adults and children to establish a person's lack of power to control his sexual impulses, it made no statutory distinction between classes of injuries likely to be inflicted on future potential victims if the

petitioner were released into the community. It could have made such a distinction, as it has done elsewhere in defining certain offenses. See, e.g., G. L. c. 265, § 13J (assault and battery on child causing bodily injury); G. L. c. 265, § 13K (assault and battery on elder or person with disability causing bodily injury); G. L. c. 265, § 22 (rape resulting in serious bodily injury). By comparison, other offenses (including sexual offenses) require no showing of physical injury. Indeed, the crime of rape may be proved without the infliction of any bodily harm, but on evidence of a threat of bodily harm. See, e.g., *Commonwealth* v. *Cyr*, 13 Mass. App. Ct. 903, 904 (1982). Absent an express limitation on the word "injury" in the definition of "sexually dangerous person," we conclude that the ordinary meaning of the term is comprehensive and includes psychological, mental, or emotional trauma. See *Commonwealth* v. *Hammond*, 50 Mass. App. Ct. 171, 175-176 (2000) (judge correctly instructed that term "injures a person" for purposes of crime of malicious explosion, G. L. c. 266, § 101, includes "significant emotional injury"). There was no error in the instruction.

c. *Instruction on compulsive sexual misconduct.* The judge instructed the jury that the Commonwealth had the burden of proving "beyond a reasonable doubt that [the petitioner] remains sexually dangerous today." Quoting directly from G. L. c. 123A, § 1, the judge defined a "sexually dangerous person," for purposes of a § 9 hearing, as "any person . . . previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by . . . violence against any victim . . . and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires." Over the petitioner's objection, the judge then instructed that "[a]n act of sexual misconduct may be *compulsive* if the act is *impulsive* or is committed because the actor lacks the power to control his sexual impulses" (emphasis added).

The petitioner claims that the judge's instruction erroneously

equated "compulsive" with "impulsive" behavior,[10] and thereby permitted the jury to find the petitioner to be "sexually dangerous" based on mere impulsivity, which is insufficient to establish his status as a sexually dangerous person. See *Kansas v. Crane*, 534 U.S. 407, 413 (2002) (State must "distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case").

"[A] charge is to be considered as a whole to determine whether it is legally correct, rather than tested by fragments which may be open to just criticism." *Gilchrist* v. *Boston Elevated Ry.*, 272 Mass. 346, 353 (1930). This principle applies to criminal and civil cases alike. *Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 (1968). The judge twice quoted the statutory definition of "sexually dangerous person" as it applies to § 9 hearings. She stressed three more times that the Commonwealth must prove beyond a reasonable doubt that if the petitioner were discharged, he would be likely to attack or inflict injury on a potential victim "because of his uncontrolled or uncontrollable desires." On a fourth occasion she instructed that the Commonwealth must prove that the petitioner is likely to attack or injure a potential victim because he "continues to lack the power to control his sexual impulses." The instruction as a whole adequately apprised the jury of what was meant by the term "compulsive sexual misconduct." See *Commonwealth* v. *Westerman*, 414 Mass. 688, 702 (1993); *Commonwealth* v. *Lykus*, 406 Mass. 135, 144 (1989). In the mind of a reasonable juror, the single reference to "impulsive" misconduct could not overpower the accurate and complete jury instruction as to the elements of sexual dangerousness.

d. *Other instructions.* The petitioner raises other challenges to the jury instructions. He contends that the judge erred by (1) failing to instruct the jury that the Commonwealth must prove that the lack of power to control sexual impulses is the result of

---

[10]The petitioner relies on the New Oxford American Dictionary (2001), which defines "compulsive" as "resulting from or relating to an irresistible urge, esp. one that is against one's conscious wishes: compulsive eating." "Impulsive" is defined as "acting or done without forethought."

a mental illness or mental abnormality, and (2) failing properly to instruct the jury concerning the "psychological forces, conditions, problems, or other root causes" they could consider in deciding whether the petitioner remains sexually dangerous. See *Dutil, petitioner*, 437 Mass. 9, 15-16 (2002). In each case, the petitioner either failed to request a jury instruction on the matter or did not object to this aspect of the charge, thereby waiving his argument on appeal. See *Commonwealth* v. *Bowler*, 407 Mass. 304, 307 (1990); *McNamara* v. *Honeyman*, 406 Mass. 43, 53 (1989).

He also argues that the jury were erroneously instructed that they need not return a unanimous verdict, and that a verdict could be returned based on the determination by eleven of the thirteen jurors. At trial, the parties agreed that all thirteen jurors would deliberate, and the petitioner raised no objection to the judge's instruction concerning a less than unanimous verdict. See *Sheridan, petitioner*, 422 Mass. 776, 777, 779-781 (1996) (discharge proceedings under prior version of § 9 could be decided by verdict of five-sixths of jurors [G. L. c. 234, § 34A]). The issue is waived.

e. *Other issues.* The petitioner argues that the evidence was insufficient to warrant his continued commitment. Where, as here, "a jury trial is demanded, the matter shall proceed according to the practice of trial in civil cases in the superior court." G. L. c. 123A, § 9. The means to test the sufficiency of the evidence at a civil jury trial is by motion for directed verdict, and not, for the first time, on appeal. See Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974). Because the petitioner did not move for a directed verdict, the issue is waived.[11] See *Bolton* v. *Massachusetts Bay Transp. Auth.*, 32 Mass. App. Ct. 654, 657 (1992). See also *Redgate, petitioner*, 417 Mass. 799, 802 (1994) (nonjurisdictional issue not presented at trial need not be considered on appeal).

The petitioner also challenges the predicate for his continued commitment by claiming that there were errors (of various forms) in his original commitment. A discharge petition under

[11]The petitioner also failed to raise the sufficiency of the evidence in a motion for a new trial under Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974). See *Cassamasse* v. *J.G. Lamotte & Son*, 391 Mass. 315, 320 (1984).

G. L. c. 123A, § 9, is not the appropriate means to challenge the validity of the original commitment. See *Davis, petitioner*, 383 Mass. 645, 649-650 (1981). The sole issue at the § 9 hearing is whether the petitioner, having previously been committed, remains sexually dangerous. *Id.* The petitioner could have, and did, appeal from his original commitment. See *Commonwealth* v. *McHoul*, 372 Mass. 11 (1977). See also *McHoul* v. *Commonwealth*, 10 Mass. App. Ct. 878 (1980). He cannot do so again on this appeal from the denial of his § 9 discharge petition.

*Judgment affirmed.*

SPINA, J. (concurring in part and dissenting in part, with whom Cowin, J., joins). I agree that the judgment that McHoul remains a sexually dangerous person should be affirmed, but I disagree with that portion of the court's opinion that approves the use of so-called "totem pole" hearsay contained in reports made admissible by G. L. c. 123A, § 9. The hearsay in this case essentially involves statements made by McHoul. To the extent that his statements were made directly to persons who prepared reports that are admissible under the statute, those reports were properly admitted. To the extent McHoul's statements are quoted in reports admissible under the statute but prepared by persons who did not witness McHoul's statements, his statements should have been redacted from those reports. However, because Mc-Houl did not properly preserve the error, it is waived. The question of totem pole hearsay could have been resolved easily if the Commonwealth had offered in evidence copies of the admissible reports that contained McHoul's statements, or if the experts quoting from such reports had attached copies of the admissible reports to their own and incorporated them by reference.

"Generally, evidence based on a chain of statements is admissible only if each out-of-court assertion falls within an exception to the hearsay rule." *Commonwealth* v. *McDonough*, 400 Mass. 639, 643 n.8 (1987), citing *Bouchie* v. *Murray*, 376 Mass. 524, 527-531 (1978). Our appellate courts have applied this principle to the reports made admissible by statute in sexually

dangerous persons proceedings. See *Commonwealth* v. *Markvart*, 437 Mass. 331, 339 (2002) ("qualified examiner's report must be redacted prior to its submission to the jury to exclude any facts or data that were not presented in evidence"); *Commonwealth* v. *Boyer*, 58 Mass. App. Ct. 662, 666 (2003) ("While [G. L. c. 123A, § 14 (*c*),] trumps a hearsay objection to the admission of the report, still remaining is the issue of hearsay within the report. Traditional rules of evidence apply").

The insertion by the Legislature of the last phrase ("and any other evidence that tends to indicate that he is a sexually dangerous person") among the types of evidence that may be considered at a § 9 hearing supports the conclusion that totem pole hearsay analysis is applicable to reports made admissible by statute. See St. 1993, c. 489, § 7. This court has held that that phrase did not authorize the admission of otherwise inadmissible evidence. See *Commonwealth* v. *Bladsa*, 362 Mass. 539, 541-542 (1972), citing G. L. c. 123A, § 5, as appearing in St. 1958, c. 646, § 1. It would be internally incongruous for the statute to preclude the admission of totem pole hearsay when offered through a witness, but allow the same evidence to be admitted through the report of the same witness. The statute resolves many of the potential objections to totem pole hearsay, provided the proponent of the evidence follows the path prescribed by the statute.

"[Because] these proceedings may result in the commitment of the [petitioner] to an institution," due process principles are implicated. *Id.* at 541. See *Specht* v. *Patterson*, 386 U.S. 605 (1967); *Commonwealth* v. *Bruno*, 432 Mass. 489, 502 (2000), quoting *Commonwealth* v. *Travis*, 372 Mass. 238, 250 (1977). In probation revocation proceedings, for example, which, as here, are not part of a criminal prosecution, see *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782 (1973), probationers are entitled to certain due process protections including "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.* at 786, quoting *Morrissey* v. *Brewer*, 408 U.S. 471, 489 (1972). A petitioner under G. L. c. 123A, § 9, is entitled to at least the same due process protections. See *Commonwealth* v. *Travis, supra*; *Andrews, petitioner*, 368 Mass. 468, 488 (1975).

A judge may, consistent with due process principles, dispense with a probationer's conditional right of confrontation if presenting a witness with personal knowledge is unrealistic, provided the evidence that otherwise would be offered through that witness would be admissible under standard exceptions to the hearsay rule or otherwise bears a substantial indicia of reliability. See *Commonwealth* v. *Durling*, 407 Mass. 108, 112-120 (1990). That same principle should apply to sexually dangerous persons proceedings. Although we have said that hearsay contained in police reports admissible under § 14 (*c*) is highly reliable, that is because the hearsay is descriptive of an offense for which the petitioner had been tried and convicted. See *Commonwealth* v. *Given*, 441 Mass. 741, 747-748, cert. denied, 543 U.S. 948 (2004). The hearsay offered here has not been shown to fall under a standard exception to the hearsay rule or bear a substantial indicia of reliability.

For these reasons, I respectfully disagree with my colleagues on the question of layered hearsay within reports made admissible by G. L. c. 123A, § 9.